## MRS. J. W. DIX v. STATE.

No. A-2889.   Opinion Filed April 1, 1919.

(179 Pac. 624.)

1. **INDICTMENT AND INFORMATION—Reference to Accused's Preliminary Examination—Surplusage.** Reference to the fact that the accused had had a preliminary examination should not be incorporated in an information in a felony case; but, if the information does allege such jurisdictional matter, the allegation is wholly irrelevant, and will be treated as surplusage.

2. **SAME—Information—Defects in Form—Demurrer.** Defects in the form of an information, or mere grammatical errors, do not tend to prejudice the substantial rights of the defendant, and present no ground for a demurrer to an information.

3. **WITNESSES—Cross-Examination—Discharged Codefendant.** A person charged with the commission of a crime in this state is a competent witness only at his own request. Section 21, art. 2, of the Constitution, among other things, provides: "No person shall be compelled to give evidence which will tend to incriminate him." In this case the defendant offered her codefendant, Mrs. Mossie Baustert, as a witness in defeidant's behalf, but Mrs. Baustert refused to testify on the ground that her evidence might incriminate her, which objection was sustained by the trial court and the witness excused. Later, the state offered Mrs. Baustert as a witness in rebuttal to impeach some statements attributed to her by the defendant. On motion of Mrs. Baustert's counsel, the case against her was dismissed by the state in order to use her as a witness against her codefendant, After the state had examined Mrs. Baustert on matters solely in rebuttal of the testimony of the defendant, counsel for the defendant attempted to subject Mrs. Baustert to a thorough cross-examination into all the details of the crime. The trial court sustained the state's objection to this line of examination on the ground that it was not proper cross-examination. **Held,** the trial court's ruling on the objection was correct.

4. **WITNESSES—Evidence—Testimony of Codefendant.** The state, having dismissed its prosecution against Mrs. Baustert, thereby removed the disqualification that otherwise existed against her being a qualified witness in behalf of her codefendant, Mrs. Dix, on a separate trial. After the case had been dismissed against Mrs. Baustert, and the court had sustained the state's objection to the defendant fully cross-examining Mrs. Baustert into her

knowledge of all the details of the crime on the ground that it was improper cross-examination, counsel for the defendant should have renewed their request to use the codefendant, Mrs. Baustert, as a witness for and in behalf of Mrs. Dix, as it was then discretionary with the trial court to permit the defendant to reopen her case for the purpose of using Mrs. Baustert as a witness in her behalf.

5.    **APPEAL AND ERROR—Conviction—Reversal—Testimony of Co-defendant.** A judgment of conviction will not be reversed on the ground that the defendant should have an opportunity to use her codefendant as a witness in her behalf, unless it appears that such codefendant has become a competent witness for the defendant subsequent to the trial in which the defendant's conviction is had, and showing is also made that the testimony of the codefendant to be given on the retrial would be such as likely to change the result reached in the former trial.

*Appeal from District Court, Canadian County;*
*George W. Clark, Judge.*

Mrs. J. W. Dix was convicted of the crime of murder, and sentenced to serve a term of life imprisonment in the state penitentiary, and she appeals.    Judgment affirmed.

The defendant, Mrs. J. W. Dix, and Mrs. Mossie Baustert were jointly informed against in the district court of Canadian county, Okla., charged with the murder of the latter's husband, Henry Baustert.    A severance was granted, and the state elected to try this defendant first.

At the time of the homicide, which occurred on or about the 27th day of February, 1916, and for several years prior thereto, the defendant, Mrs. J. W. Dix, had been operating a boarding and rooming house, which was located in the city of El Reno, Okla.    Mrs. Mossie Baustert was a niece of this defendant.

The Bausterts had been married about four years at the time of the homicide, and were living in the town of Okarche, Okla., where he was engaged in the poultry busi-

ness. They had one child, a little girl about two years old, who spent considerable time in the home of this defendant.

About 10 o'clock on the evening of the 26th of February, the Bausterts came from Okarche to the home of the defendant, to visit for a day or two, and take their daughter, who had been visiting the defendant for about a week, back home with them. After their arrival they talked for a while, and about 12 o'clock, the defendant arranged the room which the deceased and his wife were to occupy that night. This room was the one ordinarily occupied by the defendant, and contained a full-sized bed, in addition to a dresser and some other furniture. The defendant, however, arranged a cot in that room for the deceased to sleep on, as it had been the custom of the deceased and his wife not to sleep together since the birth of their child. This cot was placed so that the head of the sleeper was almost directly in front of the door entering the room, the cot being just far enough from the wall in which the door was located to allow the door to open. The defendant said she would occupy the lounge, which was in a room across the hall from the room in which the deceased slept, and when they retired a dim light was left burning in the room in which deceased and his wife were sleeping.

About 1 o'clock on the morning of the 27th, the defendant awakened the roomers on the second floor of the house, and asked if the water heater had blown up again. She went up stairs to investigate, and then came back down, and called to the roomers to come down; that "something dreadful has happened." The roomers came down, and found the deceased lying on the cot with a bullet wound in his head, from the effects of which, after having been removed to a hospital in the city of El Reno, he died about 4:30 o'clock that morning.

When the deceased was found wounded, he was lying partially on his right side, with his face turned toward the door. The bullet had entered his head just above the ear on the left side, and lodged just above and a little back of the right ear.

As soon as the alarm was given, the officers were called, and between that time and daylight several thorough searches were made of the premises, but no firearms were found. About 9 o'clock, however, a justice of the peace discovered an old rusty revolver in a closet of the room in which the homicide occurred, but it was evident that it had not been discharged recently.

On the day following, after the defendant had been removed to the county jail, she cautioned the girl who was working for her at that time not to use the lard in a particular can, because it was too hard. The defendant was not content with telling the hired girl once not to use that particular lard, but repeated that it was too hard to use, and that she would have some more sent out. It was shown that the defendant and this girl had been using this lard for ten days prior thereto, and had found nothing wrong with it. That same morning, however, a neighbor lady had come over to the Dix house to assist the hired girl in the cooking, and when she went to get some of this lard to use in making pies, she found that there was a layer of dark colored lard on top. She scraped this off in order to obtain white lard, and in so doing she struck something hard and black. Thinking it was a butcher knife, she paid no more attention to it at that time. On the following Wednesday, however, this neighbor lady and the hired girl made more investigations, and found that a revolver had been concealed in the lard. Upon an examination by the officers, it was found that the revolver was

of the same caliber as the bullet that was extracted from the deceased's head, that one chamber had been discharged recently, and that there was some brown sugar sticking to parts of the revolver. Upon further search, the officers found a sack of brown sugar in the room adjoining the room in which the defendant claimed to have slept on the fatal night, and this sugar apparently corresponded with that found on the revolver. This revolver was identified by one of the roomers at the Dix house as one owned by him, but which had been missing for about a year. Such witness testified that he was staying at the Dix house at the time this revolver disappeared.

It also developed that the defendant had reared her niece, Mrs. Mossie Baustert, the wife of the deceased, from the time she was about six years old, that the defendant had been opposed to her marriage to the deceased, that the defendant had frequently expressed her dislike for the deceased, and that on the Friday before the homicide occurred early Sunday morning the defendant told a witness that she was going to send for the wife of the deceased, and if the deceased came, defendant and Alice, who was the little daughter of the deceased, were planning to get rid of him; that defendant had at least once endeavored to get the wife of the deceased to separate from him. It also appeared that immediately after the homicide the defendant advised the wife of the deceased that she could come and live with her as she had always done, and that the defendant discussed what furniture the wife of the deceased should sell and what she should bring with her.

None of the witnesses heard the noise of the fatal shot except the defendant, and after the alarm was given the defendant's hair was seen to be done up in the same manner that she was accustomed to wear it during the

day. The lounge, too, on which defendant claimed to have slept was discovered to have a pile of magazines on it, which had been there the day before, and which had not been removed.

It cannot be doubted that the revolver found in the can of lard was the weapon used to kill the deceased. The lard in that can was the lard which defendant had been using for domestic purposes every day. It was apparent that lard had been melted and poured over the top of the lard in which the revolver was buried for the purpose of giving the appearance that the lard in the can had not been in use. The defendant's anxiety to prevent the discovery of the concealed revolver by warning the hired girl not to use the lard from this can, that she would send other lard for cooking purposes, together with the fact that the revolver found concealed in the lard was of the same caliber as the bullet found in the head of the deceased, and the additional facts that the revolver found had been recently discharged, together with the evidence of brown sugar, which was found in a sack in the room next to where the defendant was supposed to have slept, and which brown sugar she had been using, and the defendant's dislike for the deceased and her threats against him made shortly before the homicide, point unerringly to the guilt of this defendant of the crime charged. That she committed the crime directly, or aided and abetted another in its commission, will not be doubted by one who has read the record from an impartial viewpoint.

*Babcock & Trevathan* and *Pruiett, Sniggs & Patterson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., and *E. F. Maley,* Co. Atty., for the State.

MATSON, J. (after stating the facts as above).  It is
first alleged that the court erred in failing to strike from
the information the allegation that the defendant had
waived a preliminary examination.  Reference to a prelim-
inary examination should not have been incorporated in
the information, and the trial court should have sustained
the motion to strike the same, as it forms no material part
of the charge against the accused.  The fact that the ac-
cused has had a preliminary examination or has waived
same is a matter prerequisite to the jurisdiction of the
trial court in felony cases; but, if the information does
allege such jurisdictional matter, the allegation is wholly
irrelevant, and will be treated as surplusage.  *Davis v.
State,* 4 Okla. Cr. 508, 113 Pac. 220; *Wood v. State,* 3 Okla.
Cr. 553, 107 Pac. 937.  The alleged error, therefore, is
technical, and cannot be considered as in any way prejudic-
ing the substantial rights of the defendant on the merits.

Also the refusal of the trial court to sustain a demurrer
to the information because of improper punctuation is
purely technical.  An examination of the information
shows that it contains a good charge for murder.  Defects
in the form of an information, or mere grammatical errors,
do not tend to prejudice the substantial rights of the de-
fendant, and present no ground for a demurrer to an in-
formation.  *Blair v. State,* 4 Okla. Cr. 359, 111 Pac. 1003.

The conclusion is reached, therefore, that the grounds
of alleged error, both in the failure of the trial court to
strike redundant matter from the information and failure
to sustain the demurrer thereto, are without merit.

The second contention of defendant is that the court
erred in not permitting her to use the codefendant, Mrs.
Mossie Baustert, as a witness in her behalf.  The record
shows that this defendant and Mrs. Mossie Baustert were

jointly charged; that defendant demanded a severance, and her trial was held first. There had been no disposition of the case against Mrs. Mossie Baustert until after the defendant had closed her case. The defendant attempted to use Mrs. Mossie Baustert as a witness in her behalf, and the said Mrs. Mossie Baustert, being a codefendant and charged with the same offense, refused to testify. The court sustained her in such refusal. This was not error. Section 5881, Rev. Laws 1910, sustains the court's action, and is as follows:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this state, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel, it shall be ground for a new trial."

Section 21, art. 2 of the Constitution, in part provides:

"No person shall be compelled to give evidence which will tend to incriminate him except as in this Constitution specifically provided. * * *"

Also in the case of *John Buxton v. State,* 11 Okla. Cr. 85, 143 Pac. 58, this court held:

"Under section 5881, Rev. Laws 1910, providing that, in criminal proceedings, 'the person charged shall at his own request, but not otherwise, be a competent witness,' a codefendant is competent as a witness for all purposes, where he requests to be a witness in his own behalf. It does not matter whether his testimony is for or against himself, or for or against his codefendant; the only limitation in the statute is that he cannot be compelled to testify either for himself, his codefendant, or for the state while he is a party in the case."

It developed from defendant's testimony on the trial that it would be necessary for the state to use the co-defendant, Mrs. Mossie Baustert, in rebuttal to impeach some of the statements attributed to her by the defendant. This was done, and, on motion of Mrs. Baustert's counsel, the state dismissed the case against her in order to use her as a witness to impeach her codefendant and defendant attempted to subject her to cross-examination on matters not properly the subject of the rebuttal examination. The court sustained an objection by the state to this line of examination, the record being as follows:

"Q. You say, Mrs. Baustert, you didn't use the language of 'that awful disease?' A. No; I didn't.

"Q. At the time of this unfortunate tragedy was your husband afflicted with a venereal disease?

"By Mr. Phelps. Objected to as incompetent, irrelevant, and immaterial and not proper cross-examination.

"By Mr. Pruiett: If the court please, this morning we couldn't use this codefendant when I asked her this question, for the reason that they objected, and she claimed her constitutional right.

By Mr. Roberson: We objected to that statement, and then we withdrew our objection this morning, and insisted that the question be asked.

"By Mr. Pruiett: I understand, but they objected, and she claimed her constitutional right. Now, your honor, this testimony is competent on cross-examination for the reason, the testimony of the witness they are seeking to impeach is that she used the words, 'the awful disease.' Now, if this witness knows that he had this disease, isn't it competent to go to these jurors, impeaching her own credibility as to whether or not she was likely to have used that expression?

"By Mr. Phelps: We renew our objection to the speech of the attorney for the reason it is made for the purpose of influencing the jury.

"By the Court: I don't think it is competent. The court has some doubt as to the correctness of its ruling as to some of the evidence. I think the question was probably competent at that time as bearing upon the fact that on that night the witness and her husband did not occupy the same bed, there having been evidence introduced prior to that time to the effect that it had been their custom to occupy the same bed until, I think, the child was about two years old. But this is cross-examination of the witness in rebuttal, and nothing has been asked this witness that would call for this question or an answer to it. The objection will be sustained.

"By Mr. Pruiett: To which the defendant excepts."

The trial court's ruling on the objection to the question asked was without error.

There was no request made by counsel for the defendant for permission to use the witness at this time as a witness for the defendant; neither is there any showing made of what the testimony of Mrs. Baustert would have been had the trial court permitted a full cross-examination into all the facts and circumstances within the knowledge of the witness, surrounding the killing of Baustert.

Counsel contend that Mrs. Baustert having refused to testify in behalf of this defendant because her answers to questions might tend to incriminate her shows conclusively that she (Mrs. Baustert) was the guilty party, and for that reason, if for no other, the court erred in not permitting the fullest possible cross-examination. In this appeal we are not concerned with the question of the guilt or innocence of Mrs. Baustert, except in so far as her guilt or innocence may have some bearing on the question of the guilt or innocence of Mrs. Dix.

It cannot be presumed that Mrs. Baustert alone was guilty of the crime, and that her testimony would have

cleared Mrs. Dix of any criminal responsibility for the murder of Baustert. Was it error to limit counsel for defendant in cross-examination of this witness to matters strictly rebuttal in the absence of some showing that her testimony would tend to exonerate Mrs. Dix? We think not. It would be foolish, in the face of the overwhelming evidence in this record tending to establish the guilt of Mrs. Dix, to reverse this judgment in order to allow Mrs. Baustert to testify as a witness for Mrs. Dix in a subsequent trial, and the result be that Mrs. Baustert would testify to facts that strengthen the state's case against Mrs. Dix.

Before this court would be justified in reversing this judgment of conviction on the ground that defendant should have an opportunity to use her codefendant as a witness in her behalf, there ought to be some showing that the testimony of Mrs. Baustert, given on the subsequent trial, would be such as likely to change the result reached by the jury on this trial.

It is not enough that evidence may be produced on the subsequent trial to fasten the guilt on Mrs. Baustert, but a showing should be made that reasonably tends to the conclusion that Mrs. Dix has been unjustly convicted. Both Mrs. Dix and Mrs. Baustert may have been guilty of this offense. The guilt of neither depends on the innocence of the other. Either had equal opportunity with the other to commit the deed, and the court is satisfied from the evidence in this record that both were likely concerned in its commission.

Before the taking of evidence had been concluded in this trial, the state dismissed its prosecution against Mrs. Baustert. This action removed the disqualification that otherwise existed against her being a qualified witness in

behalf of her codefendant, Mrs. Dix. After the dismissal of the state's case against Mrs. Baustert, there was no request interposed by Mrs. Dix to use Mrs. Baustert as a witness in her own behalf, although she was available for that purpose before the trial had been concluded, and it was discretionary with the trial court to permit the defendant to reopen her case for the purpose of using Mrs. Baustert as a witness had she so desired. *Harvey v. Territory,* 11 Okla. 156, 65 Pac. 837; *Shires v. State,* 2 Okla. Cr. 89, 99 Pac. 1100; *George v. U. S.,* 1 Okla. Cr. 307, 316, 97 Pac. 1052, 100 Pac. 46; *Ferrell v. State,* 45 Fla. 26, 34 South. 220; *Fordham v. State,* 125 Ga. 791, 54 S. E. 694; *Frazier v. State,* 112 Ga. 869, 38 S. E. 349.

How, then, can this defendant, with such a display of lack of diligence on her part to procure the evidence of Mrs. Baustert, expect this court to reverse a judgment of conviction against her based on evidence which clearly establishes her guilt for the sole purpose of permitting that to be done which she already had the opportunity to do. We are not familiar with a decision of an appellate court to the effect that, without some showing that the evidence of an incompetent witness that has since the former trial become competent, would be material to the defense interposed and likely to change the result, a new trial will be granted, merely for the purpose of obtaining the testimony of such witness.

Even the cases that hold that a new trial will be granted where there is a showing that new evidence material to the defense can be obtained from a witness who was incompetent at the time the case was tried are cases wherein the witness has become competent since the former trial and not during its progress. We know of no case that holds that where a witness became competent

during the progress of the trial and before the case was concluded, and this fact became known to the defendant, and no request was then made to use such witness on that trial, a new trial would be granted to give defendant another opportunity to use such witness in his behalf. Certainly if this was an application for a new trial on the ground of newly discovered evidence, the trial court should have overruled the motion because of lack of diligence. In the case of *State v. Drake*, 11 Or. 396, 4 Pac. 1204, it is held:

"A motion for a new trial on the ground that the defendant desires the evidence of an acquitted codefendant cannot be sustained on the bare affidavit of the defendant, unsupported by an affidavit of the acquitted codefendant, and without allegations that the latter can prove facts of that character which would be considered material for his defense, or which would render a different result probable in a retrial."

We find no prejudicial error in the ruling of the trial court in refusing to permit a cross-examination of the witness Mrs. Baustert beyond the scope of her testimony given in rebuttal. Had defendant desired to use Mrs. Baustert as a witness in her own behalf, her intention so to do should have been clearly indicated after the state had dismissed the prosecution against Mrs. Baustert. The question would then have been squarely put to the trial court as a matter of discretion as to whether Mrs. Baustert should have been permitted to testify in behalf of Mrs. Dix. It is apparent that the cases cited by counsel, to the effect that a new trial should be granted, "if after a defendant in a criminal case is tried and convicted his codefendant is tried and acquitted, the incompetency of the latter as a witness thus being removed, his testimony constitutes newly discovered evidence which warrants granting

a new trial to the convicted defendant, provided such testimony is of a character as likely to change the result" (*Gill v. State,* 56 Tex. Cr. R. 202, 119 S. W. 684, 17 Ann. Cas. 1164; *Helm v. State,* 20 Tex. App. 41), are not in point, because in this case the codefendant became a competent witness for the defendant during the progress of the trial and not afterwards, and there is no showing that the evidence sought would be such as likely to change the result. The defendant should have made some effort to use Mrs. Baustert as a witness during the trial, and not wait until a conviction has been had, and then for the first time assert that she should have the advantage of the testimony of her codefendant, and for that reason a new trial should be granted.

We find no reversible error in the record, and the judgment is therefore affirmed.

. DOYLE, P. J., and ARMSTRONG, J., concur.