## JAKE TINGLEY v. STATE.

No. A-3102—Opinion Filed October 25, 1919.

Rehearing Denied January 12, 1920.

(184 Pac. 599.)

1. **TRIAL—Evidence in Rebuttal—Discretion of Trial Court.** It is discretionary with the trial court, in furtherance of justice, to permit evidence in rebuttal which would have been competent evidence in chief.

2. **APPEAL AND ERROR—Harmless Error—Admission of Evidence.** This court will not reverse a judgment of conviction on the ground of the improper admission of evidence unless it appears, after an examination of the entire record, that in the opinion of the court the error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

3. **WITNESSES—Competency—Husband and Wife.** Neither the husband nor wife is a competent witness against the other, except in a criminal prosecution for a crime committed one against the other. In this prosecution, the defendant was not charged with the commission of a crime against his wife; he was therefore incompetent as a witness to disclose communications made by his wife to him.

*Appeal from District Court, Caddo County;*
*Will Linn, Judge.*

Jake Tingley was convicted of manslaughter in the first degree, his punishment fixed at seven years' imprisonment in the state penitentiary, and he appeals. Affirmed.

This is an appeal from the district court of Caddo county, wherein the defendant, Jake Tingley, was convicted of manslaughter in the first degree, and sentenced to serve a term of seven years' imprisonment in the state penitentiary for the killing of one W. H. Overholser.

The killing occurred in the city of Anadarko, Caddo county, on the evening of the 21st day of August, 1916. The defendant had been a resident of Caddo county for a number of years, conducted a pawnship in the city of Anadarko, and lived about one-half mile east of the city. At the time of the commission of the homicide, he was a married man, having a wife and several small children.

The deceased, W. H. Overholser, was a resident of Wichita, Kan., an attorney at law, and at the time of the homicide was visiting the family of Mr. G. W. Milne, who resided near the town of Verden, Okla., some distance east of where the defendant lived.

The defendant and the deceased had known each other only for a day or two prior to the killing. The killing was the outgrowth of domestic troubles between the defendant and his wife, and it appears that Mrs. Tingley just prior to the killing had consulted with the deceased, Overholser, with a view to obtaining a divorce from the defendant, the custody of their children, and a division of property. The defendant had accumulated considerable property, some $40,000 or $50,000, at the time of the commission of this alleged crime.

It is unnecessary to go into a detailed statement of all the facts and circumstances surrounding this offense.

The record is voluminous, and it would consume considerable space to state fully all the facts detailed in evidence.

The defenses interposed were self-defense and insanity. According to the evidence on the part of the state, the defendant was proven guilty of a deliberate, willful, and premeditated murder; while according to his own testimony on the issue of self-defense there is some slight evidence of a doubtful character which tends to show, if believed, that the killing was in defense of his person. The recollection of the defendant, however, of just what occurred immediately preceding and immediately subsequent to the killing is very hazy, necessarily so because of his defense of temporary insanity, which he claims was brought about by misconduct between his wife and the deceased, and also between his wife and one Ed Caesar, immediately preceding the killing as to Overholser, and for some time prior thereto as to the said Ed Caesar.

The testimony relative to the temporary insanity of the defendant is composed largely of evidence from the defendant as a witness in his own behalf, in which he detailed certain alleged misconduct on the part of his wife with the said Ed Caesar, and also certain reports that were brought to him that his wife was seen in the company of a man in an automobile some two or three hours before the killing, which man the defendant believed to be the deceased, Overholser, and this alleged misconduct, together with the fact that his wife had left his home a night or two before the killing and had not returned thereto, and the constant outcrying of the children for their mother, so dethroned his reason as to render him temporarily insane and not criminally responsible for the commission of the act. This testimony was supplemented

by that of an alienist, who expressed his opinion, based upon a long hypothetical question detailing the defendant's theory of the case, that the defendant was insane at the time of the commission of the act. There was also some testimony on the question of the defendant's insanity by laymen. In rebuttal, the state was permitted to prove that the defendant had been consorting with a woman of lewd character in the city of Anadarko; that he had been a frequent visitor to the apartments of such woman, and had paid her living expenses, and was frequently seen in her company; and that the defendant had been told a short time before the commission of the homicide that his wife was acquainted with all these facts and was consulting the deceased with reference to obtaining a divorce from him on that ground, and that she had gone with the deceased to the city of Anadarko a short time before the killing took place.

The deceased was killed about 8:30 p. m. on one of the main streets in the city of Anadarko, in front of the residence of W. F. Milne, where the deceased and his wife were stopping temporarily. The deceased was in an automobile at the time he was shot; defendant firing some seven or eight shots from a pistol or pistols, several from a short distance and the last two after defendant had mounted deceased's automobile, the fatal shot entering from the rear and below the shoulder.

*Bristow & McFayden* and *Pruiett, Sniggs & Patterson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen. *(A. J. Morris,* of counsel), for the State.

MATSON, J. (after stating the facts as above). It is contended that the defendant was prejudiced by the ad-

mission of certain incompetent and irrelevant evidence on the part of the state, over the objection and exception of the defendant, in rebuttal. After the defendant had rested his case, the state in rebuttal, over objection and exception, introduced witnesses who testified that the defendant, for some time prior to the commission of the homicide and up until the time of its commission, had been frequently seen in the company of one Nell Martin, an immoral woman; that defendant paid her meat bills, was seen at her room in the daytime and nighttime, and stated that it was none of anybody's business what he and the said Nell Martin did.

It is contended that this evidence was incompetent and irrelevant as tending to show that the defendant was guilty of a separate and distinct offense from that charged in the information; that it tended to show that he was a man of immoral character; and that its admission, especially in rebuttal, was clearly prejudicial to the defendant's substantial rights, in view of the fact that the defendant did not introduce any evidence whatever as to his general reputation for peace and quietude, and his reputation for any other trait of character was not an issue in the case. Authority is cited in the brief of counsel for defendant tending in some degree to support the contentions made.

The question of the competency of evidence in any particular criminal case, at any particular stage of the proceedings in that case, depends upon the issues as joined in the trial. In this case, it was the contention of the state that the killing was a deliberate murder, and that the defendant's motive was to prevent the deceased from assisting defendant's wife in her proceedings for a divorce and alimony, the custody of their children, and a division of their property, in which proceedings the defendant's

adulterous acts with the said Nell Martin would necessarily be disclosed, thereby leading to and resulting in a criminal prosecution against the defendant for such felony. The truth of the cause that moved the defendant to kill the deceased was clearly an issue in the case, especially if a conviction of the crime of murder was to be had.

Also it is contended on the part of the state that the defendant, having testified that he believed the deceased and his (defendant's) wife were intimate with each other, that the deceased had invaded his home, and partly by reason of such conduct his reason was temporarily dethroned, the state had a right to show, to rebut any presumption of insanity arising from such belief, that the real purpose of the defendant in killing the deceased was to prevent deceased from assisting defendant's wife in making disclosure of defendant's relations with Nell Martin, a woman of immoral character, and that defendant, by reason of his said relations with the said Nell Martin, had failed to keep his own life pure, and did not have that high regard for the sanctity of the home which would tend to dethrone the reason of a pure man and cause him to commit an act of homicide, otherwise inexplainable except on the ground of temporary insanity. Authority is cited in the brief on behalf of the state tending to support the contention that under the issues presented in this trial such evidence was competent in rebuttal.

In connection with this evidence, the court gave the following instruction:

"The court further instructs the jury that there has been permitted to be introduced in evidence in this case testimony of certain witnesses with reference to the association, conduct, and relation existing between the defendant and a certain woman prior to the time of the

alleged homicide, and in this connection you are instructed that this evidence was admitted for one purpose and one only and should be considered by you only for such purpose; that is, in determining a probable motive, if any, for the commission of the offense for which the defendant is charged, should you find beyond a reasonable doubt the defendant was sane at the time and was not acting in his necessary self-defense."

The fourth subdivision of section 5870, Revised Laws 1910, provides:

"The parties may then, respectively, offer rebutting testimony only, unless the court for good reason, in furtherance of justice, or to correct an evident oversight, permit them to offer evidence upon their original case."

After having provided that the state must in the first instance offer evidence in support of the indictment or information, and then that the defendant or his counsel may offer evidence in support of his defense, the Legislature has seen fit to lodge with the trial court a large discretion as to the admission of other evidence than that strictly in rebuttal, providing in the fourth subdivision, above quoted, that the court "for good reason, in the furtherance of justice, or to correct an evident oversight, may permit either party to offer evidence upon their original case." *Dickinson v. State,* 3 Okla. Cr. 151, 104 Pac. 923; *Shires v. State,* 2 Okla. Cr. 89, 99 Pac. 1100; *Cochran v. United States,* 14 Okla. 109, 76 Pac. 672; *Harvey v. Territory,* 11 Okla. 156, 65 Pac. 837.

The question here presented then is: Did the trial court abuse its discretion in permitting the state to introduce this evidence in rebuttal? In view of instruction No. 15, above quoted, and in view of the further fact that the defendant was only convicted of the crime of man-

slaughter, we fail to see wherein there was any prejudicial injury done him, even if it be admitted that this evidence was not strictly rebuttal, a question which is not necessary to a proper decision of the controversy.

The evidence was certainly admissible in chief to show motive, and to indicate that the killing was with a premeditated design to effect death, and therefore murder. But the defendant was only convicted of manslaughter, a killing which does not involve the question of premeditation or deliberation. How then, can it be said that the defendant was prejudiced by evidence, although admitted in rebuttal, which tended to establish a premeditated design for the killing? Can it be said that there was an abuse of discretion in the admission of this evidence in rebuttal which resulted to the substantial prejudice of the defendant? Clearly not.

Before this court is authorized to reverse a judgment of conviction on the ground of the improper admission of evidence, "it must appear, after an examination of the entire record, that in the opinion of the court the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Section 6005, Revised Laws 1910. To reverse this judgment of conviction upon the ground here contended for would constitute a clear miscarriage of justice, resulting perhaps in the failure to punish one who, from the evidence in the record, is at least guilty of the crime of which he was convicted.

It is also contended that the court erred in excluding from the consideration of the jury evidence of the defendant as to statements made to him by his wife relative to her relations with the deceased and with one Ed Caesar.

It is claimed that this evidence was competent to show the condition of the defendant's mind at the time he took deceased's life.

It is not the contention of the state that the evidence offered was incompetent, nor was the same excluded upon the ground that it was incompetent. The court excluded the evidence upon the ground that the defendant, as a witness, was incompetent to testify to communications made to him by his wife. Section 5882, Revised Laws 1910, provides:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases' are applicable also in criminal cases: Provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all criminal cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other except on a trial of an offense committed by one against the other."

Construing the above section, this court has held that a husband or wife is a competent witness against the other in cases where one is charged with the commission of a crime against the other.

In this case, the defendant was charged with the murder of one W. H. Overholser, clearly not a crime against his wife, or one necessarily involving the marital relation. The wife was not charged with any crime at all, and was on trial for no offense. She would not have been a competent witness in this trial against her husband as to any communications made by him concerning his relations with Nell Martin. It is obvious that under the provisions of

the foregoing statute he was incompetent also to testify to these alleged communications between him and his wife, and this though the issue of insanity was presented. The foregoing statute is not open to the construction contended for, even under the liberal interpretation heretofore given same by this court.

We have carefully examined the entire record in this case, and the conclusion is reached that the defendant was exceedingly fortunate in having been found guilty only of the crime of manslaughter, with a punishment of seven years' imprisonment in the state penitentiary.

Finding no error in the record that resulted in the deprivation of any substantial right to the defendant, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.