## C. P. WINFIELD v. STATE.

No. A-3364—Opinion Filed Aug. 16, 1920.

Rehearing Denied Jan. 15, 1921.

(191 Pac. 609.)

(Syllabus.)

1.  **INDICTMENT AND INFORMATION—Name of Defendant.**
    It is not essential to the validity of an indictment or information that the name of the defendant be correctly stated. Any error in pleading the name of a defendant in an indictment or information must be corrected upon the arraignment of that particular defendant, and the record thus made is a protection to every defendant jointly indicted or informed against with such defendant, and would be a complete protection to either or all defendants against a subsequent prosecution for the same offense.

2.  **INDICTMENT AND INFORMATION—Included Offenses—Robbery.** Where there is a prosecution and conviction of robbery in the first degree, it is immaterial that the evidence would authorize a conviction of a codefendant of the commission of conjoint robbery as robbery in either the first or second degree is necessarily included in the commission of a conjoint robbery, and,

where the evidence on the part of the state clearly establishes all the essential elements of robbery in the first degree against the defendant on trial, he may be prosecuted and convicted of that included offense; such conviction being a bar to any subsequent prosecution for robbery conjointly committed in the same transaction.

2.    **APPEAL AND ERROR —Harmless Error—Evidence.** The admission of immaterial evidence is not ground for reversal, unless the defendant was prejudiced by its admission.

4.    **WITNESSES—Questions to Discredit.** A witness may not be asked, for the purpose of discrediting him, whether or not he has ever been charged with or arrested for crime.

5.    **APPEAL AND ERROR—Necessity for Record of Excluded Evidence.** When a defendant seeks a reversal on account of an alleged error of the trial court in refusing to admit evidence offered, the record must show what this offered evidence would have been, so that this court may determine whether or not it was material and proper testimony, and as to whether or not the defendant was injured by its exclusion.

6    **WITNESSES—Questions to Discredit.** A witness may, on cross-examination, be asked whether or not he has ever been convicted of a felony, or any misdemeanor which involves moral turpitude.

7.    **SAME—Conviction of Assault and Battery.** The conviction of a witness of the crime of assault and battery is not the conviction of a misdemeanor involving moral turpitude.

8.    **APPEAL AND ERROR—Burden to Show Error—Cross-Examination.** The scope of the cross-examination of a witness is largely a matter of discretion with the trial court, and the burden is upon the appellant to show that the trial court erred in excluding evidence offered in connection with the cross-examination of a witness.

9.    **APPEAL AND ERROR—Discretion of Trial Court—Continuance.** Applications for a continuance are addressed to the sound discretion of the trial court, and a conviction will not be reversed because the trial court overruled such an application unless a manifest abuse of such discretion appears. For reasons holding no manifest abuse of discretion shown in overruling application for continuance in this case, see body of opinion.

10.    **SAME—Discretion in Reopening Case.** It is discretionary with the trial court to reopen the case after both sides have closed

for the purpose of introducing further evidence; and, unless a clear abuse of such discretion appears, no question is presented for review on appeal.

11.    EVIDENCE—Circumstantial Evidence to Corroborate Accomplice. Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime, need not be direct, but may be circumstantial only.

12.    SAME—Sufficiency for Jury. If the evidence offered in corroboration of an accomplice tends to connect the accused with the commission of the crime, its sufficiency is for the jury to decide, where the law applicable to an accomplice's testimony is fully and fairly covered in the court's instructions.

*Appeal from District Court, Pushmataha County;*

*C. E. Dudley, Judge.*

C. P. Winfield was convicted of robbery in the first degree, and he appeals. Affirmed.

*Warren & Warren* and *John Cocke,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *E. L. Fulton,* Asst. Atty. Gen., for the State.

MATSON, J. This is an apepal from the district court of Pushmataha county, wherein the defendant, C. P. Winfield, was jointly informed against together with Ida Rankin, A. Baer, and Henry McClair, charged with robbery in the first degree, in that on the 24th day of May, 1917, in Pushmataha county, the said defendant, by the use of certain deadly weapons, etc., put one A. H. Palmer and W. E. Bailey, who were respectively the president and cashier of the First State Bank of Tuskahoma, Okla., in fear of unlawful and immediate injury to their persons, and took from the possession of said parties $2,000 in money, the property of the First State Bank of Tuskahoma.

The defendant C. P. Winfield demanded a severance, and upon a separate trial was convicted, and the punishment assessed by the jury at five years' imprisonment in the state penitentiary. Upon this verdict, the court pronounced judgment of guilty of robbery in the first degree against the defendant, after overruling defendant's motion for a new trial, and sentenced the defendant to imprisonment in the state penitentiary for the period of five years. From this judgment of conviction the defendant has appealed to this court, and assigns various errors, which will be hereafter considered.

The first error assigned and relied upon for reversal may be summed up succinctly as follows: Error of the court in refusing to direct a verdict of not guilty because of a fatal variance between the allegations in the information and the proof adduced. The information alleged that Ida Rankin, A. Baer, C. P. Winfield, and Henry McClair committed the alleged robbery. Upon the trial, the evidence disclosed that the true name of one of the defendants was not Henry McClair, but Henry Clair, and it is strenuously contended that the proof of the true name of the defendant jointly informed against was a material allegation of the offense, and the failure of the state to prove the true name of the co-defendant to be identical as alleged in the information constituted a fatal variance between the allegations and the proof, and entitled the defendant to be acquitted because of said variance. With this contention, we are unable to agree. It is not essential to the validity of an indictment or information that the name of the defendant be correctly stated. If Henry Clair was informed against by a name other than his true name, section 5775, Revised Laws

1910, requires that when arraigned he must be informed of the name by which he is prosecuted, and if such name be not his true name he must then declare his true name or be proceeded against by the name in the indictment or information; and section 5777, Revised Laws 1910, further provides that if upon arraignment the defendant alleges another name to be his true name, the subsequent proceedings on the indictment or information may be had against him by that name, referring also to the name by which he is indicted or informed against. It is apparent, therefore, that the defendant Henry Clair could not take advantage of the fact that the pleader had informed against him in the name of Henry McClair. *Williams v. State,* 14 Okla. Cr. 100, 167 Pac. 763.

If it was not material as to Henry Clair that he be informed against in his true name, by what process of reasoning may it be successfully contended that it was material to any other defendant jointly informed against with him, who was a principal in the same transaction? It was not essential, or was the state required to prove, in order to convict this codefendant separately tried, that the true names of the other defendants were correctly pleaded in the information. Any error in pleading the name of a defendant in an indictment or information is required, under the Criminal Code of this state, to be corrected upon the arraignment of that particular defendant, and the record thus made is a protection to every defendant jointly indicted or informed against with such defendant, and would be a complete protection to either or all defendants against a subsequent prosecution for the same offense.

The conclusion is reached, therefore, that the variance

between the allegations of the information and the proof adduced as to the name of the codefendant was immaterial, and not fatal to the conviction of this defendant, and that the trial court did not err in overruling the motion to direct a verdict or the motion for a new trial because of such alleged variance, as this defendant, under the foregoing protective provisions of the Penal Code, could not have been misled as to the identity of the person jointly informed against with him and charged with the commission of this alleged offense.

Furthermore, it is contended:

"A person, not present, aiding another to commit conjoint robbery, cannot be punished for conjoint robbery."

In this connection, counsel for the defendant contend that the offense, if any, charged against the defendant is that of conjoint robbery, and that section 2373, Revised Laws 1910, provides:

"Whenever two or more persons conjointly commit a robbery or where the whole number of persons conjointly committing a robbery and persons present and aiding such robbery amount to two or more, each and either of such persons is punishable by imprisonment in the penitentiary for not less than five years nor more than fifty years."

Had the defendant been charged with and convicted of conjoint robbery, there might possibly be some merit in this contention. The record, however, shows that the defendant was informed against for robbery in the first degree, and that the verdict and judgment rendered against him was for a conviction of robbery in the first degree. The contention is based, therefore, on the false

assumption that the defendant was charged with and convicted of conjoint robbery, and the premise taken to that effect not being supported by the record, the contention must fall with it.

Before there can be a conviction of conjoint robbery, as provided for in section 2373, *supra*, the proof must show that there was a robbery committed in one or other of the degrees set out in section 2370. The information in this case does not attempt to charge these defendants with the conjoint commission of the robbery, but does set out facts sufficient to charge them as principals in the commission of a robbery committed in the first degree. While there may be evidence in the record which would authorize the conviction of the defendant Henry Clair of the commission of conjoint robbery, that fact would not preclude the state of the right to prosecute the other defendants for the commission of robbery in the first degree, as the crime of robbery is necessarily included in any event, and the evidence on the part of the state in this case clearly establishes all the essential element of robbery in the first degree, as defined in the Penal Code.

It is also contended that the trial court erred in admitting the evidence of P. W. Hudson, the court clerk, which was to the effect that upon arraignment of Henry McClair on the 7th day of July, 1917, he had stated in open court his true name to be Henry Clair, and the court had ordered the case to be proceeded against him in the name of Henry Clair, and the minutes of the court in this cause were to that effect.

While this evidence may have been immaterial, it

in no way tended to prejudice the substantial rights of the defendant, but, on the contrary, showed conclusively that the codefendant, Henry Clair, informed against in the name of Henry McClair, had some seven months prior to the arraignment of this defendant declared in this proceeding his true name to be Henry Clair, and that this defendant was not, at the commencement of his trial, in any way misled by the mistake in the information as to the name of such codefendant. We find no error prejudicial to the substantial rights of the defendant in the admission of this evidence.

The eighth, ninth, eleventh, twelfth, thirteenth, and fourteenth assignments of error are grouped together and treated in the brief as one assignment. They are as follows:

"Eighth. Because the court erred in refusing to permit the plaintiff in error to show by the witness Ida Rankin, that she was being prosecuted in Choctaw county, Oklahoma, for the crime of receiving stolen property from a bank robbery, and that the case was to be dismissed against her on account of her testifying in this case."

"Ninth. Because the court erred in sustaining the objection of the defendant in error to the question propounded to the witness Ida Rankin by the plaintiff in error, wherein the question was asked, 'That you was not to be prosecuted in this case, or in the case in Choctaw county, in which you are charged with receiving money stolen from a bank robbery.'

"Eleventh. Because the court erred in sustaining the objection of the defendant in error to the question propounded to the witness Ida Rankin, to wit, 'What are you expecting of the officers of this county and of Choctaw county to do with you testifying in this case?'

"Twelfth. Because the court erred in refusing to permit the plaintiff in error to show by the witness **Ida Rankin** that she had been convicted by the court of Choctaw county of the offense of 'tarring and feathering a woman.'

"Thirteenth. Because the court erred in not permitting the plaintiff in error to show by the witness Ida Rankin that Jimmy Adams had just returned from the penitentiary, and that the witness knew it, and that Adams was staying at her house.

"Fourteenth. Because the court erred in sustaining the objection to the question of the plaintiff in error, propounded to the witness, Ida Rankin, to wit: 'Did you know at the time that you and Shorty Adams and Grover Merrill and Mr. Winfield was having this conversation that Ben Willis was an escaped convict from the penitentiary of McAlester, Okla.?' "

The foregoing assignments of error, which are treated together in the brief of counsel for defendant, all relate to alleged errors of the court, in limiting the cross-examination of the state's witness, Ida Rankin, a self-confessed accomplice to the crime.

The eighth assignment of error is without merit for two reasons: (1) Because it has been repeatedly held by this court that a witness may not be asked for the purpose of discrediting him that he has ever been charged or arrested for crime. *Porter v. State*, 8 Okla. Cr. 64, 126 Pac. 699; *Slater v. U. S.*, 1 Okla. Cr. 275, 98 Pac. 110; *White v. State*, 4 Okla. Cr. 143, 111 Pac. 1010, *Musgraves v. State*, 3 Okla. Cr. 421, 106 Pac. 544; *Price v. U. S.*, 1 Okla. Cr. 291, 97 Pac. 1056. (2) As to that feature of the assignment which relates to the question of whether the witness was to receive any immunity from prosecution,

either in a criminal cause pending against her in Choctaw county for the crime of receiving stolen property, or from prosecution in this cause in which she was jointly informed against, there was no offer to prove that the witness would answer, if permitted to do so, that she had been promised immunity from either of such prosecutions; while on the contrary, the court did permit the witness to be asked if Mr. Fitzgerald, the sheriff of Choctaw county, had not promised the witness that she would not be punished in this case, or in the case against her in Choctaw county, if she testified against Mr. Winfield in this case, and the witness replied that she had not received any such promise.

This court has repeatedly held, in substance:

"When a defendant seeks a reversal on account of an alleged error on the part of the trial court in refusing to admit evidence offered, the record must show what this offered evidence was, so that this court can determine whether or not it was material and proper testimony, and as to whether or not the defendant was injured by its exclusion." *White v. State, supra; Stouse et al. v. State,* 6 Okla. Cr. 415, 119 Pac. 271; *Warren v. State,* 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121.

The ninth assignment of error is covered by what has been said relative to the eighth assignment.

The eleventh assignment of error is without merit, for the reason that the question is purely speculative, and, if intended to elicit evidence which would show the witness' interest in the result of this trial, the question should have been so framed as to call the witness' attention to some definite promise of immunity from prosecution, and it may be further stated in this connection that there was

also no offer to prove any specific evidence which would naturally follow as an answer to the question.

The twelfth assignment of error relates to the refusal of the court to permit counsel for the defendant to show by the witness, Ida Rankin, that she had been convicted by the courts of Choctaw county of the offense of "tarring and feathering" a woman. The record relative to this assignment is as follows:

"Q. How long had you known Jimmy prior to the time that he came to board at your house? A. About a week, something like a week or two weeks, something like that.

"Q. Where did you first meet him? A. I met him in Lawyer Cocke's office in Hugo. (At this time the court and counsel confer out of hearing of the jury and court reporter.)

"By Mr. J. H. Warren (at the conclusion of said conference and out of hearing of the jury): Defendant offers to show by this witness that witness has been convicted by the courts of Choctaw county of the offense of tarring and feathering a woman, and the witness will testify, if permitted to testify, that she has been so convicted, which the court overrules, and the defendant excepts."

While no direct question was asked the witness as to whether or not she had been previously convicted of any offense in any court of Choctaw county which was objected to, and the objection sustained by the trial court, nevertheless this assignment will be treated as if such question had been asked and the objection sustained.

This court has repeatedly held that a witness may, on cross-examination, be asked whether or not he has

ever been convicted of a felony or any misdemeanor which involves moral turpitude. *Slater v. U. S., supra; White v. State, supra; Nelson v. State,* 3 Okla. Cr. 468, 106 Pac. 647.

There is no offense known to the law of this state designated or defined as "tarring and feathering." Whether the question related to the previous conviction of the witness for a felony or a misdemeanor is not disclosed by the record. In order to discredit a witness because of a previous conviction either for a felony or for a misdemeanor involving moral turpitude, the witness is entitled to be asked the direct question as to his conviction for a certain specific offense, and the court in which he was convicted, in order that the witness may be fully protected in the answer made to the question, and may be fully informed as to what the cross-examiner expects to prove against the witness as to such conviction.

It may be surmised in this instance that the cross-examiner referred to the conviction of the witness of the crime of assault and battery. A conviction of such misdemeanor does not involve moral turpitude. *Gillman v. State,* 165 Ala. 135, 51 South. 722; *Pollok v. State* (Tex. Cr. App.) 101 S. W. 231; *Brittain v. State,* 36 Tex. Cr. 406, 37 S. W. 758; *State v. Prendible,* 165 Mo. 329, 65 S. W. 559.

The burden is upon the appellant to show that the trial court erred in excluding this evidence; and, unless it is made affirmatively to appear that the defendant would have been able to prove that the witness had been previously convicted either of some felony or of some misdemeanor involving moral turpitude, this court cannot say,

under such an incomplete record as this, where the scope of cross-examination is so largely a matter of discretion with the trial court that there has been a manifest abuse of such discretion in refusing to permit the defendant's counsel to cross-examine the witness on this subject.

The thirteenth assignment of error relates to the refusal of the trial court to permit counsel for the defendant to show by the witness Ida Rankin that Jimmy Adams (Henry Clair) had just returned from the penitentiary, and that the witness knew such fact, and would so testify, and knowing such fact, witness permitted said Adams to stay at her house for some six weeks prior to the commission of this alleged offense.

The record relative to this assignment of error is as follows:

"Q. You knew at that time that Shorty Adams had served a term in the penitentiary, didn't you? (State objects; incompetent, irrelevant, and immaterial. Which said objection is by the court sustained, to which ruling of the court defendant then and there duly excepted at the time. At this time court and counsel confer out of the hearing of the jury and reporter.)

"By Mr. J. H. Warren (at the conclusion of said conference and out of the hearing of the jury): Now comes the defendant and offers to show by the witness that Jimmie Adams was or had just served a term in the penitentiary, and had just returned from the penitentiary, and that the witness knew it, and that witness would so testify, and that Adams was staying at her house, and had been for the time she had testified to, she knowing that he was just recently returned from the penitentiary."

It is the opinion of the court that the exclusion of

this evidence was erroneous. On cross-examination, a witness may be asked, for the purpose of affecting his credibility, as to his associations with other persons of known bad repute. If a witness knowingly associates with ex-convicts the jury is entitled to know that fact, because the jury is the exclusive judge of the credibility of all the witnesses in a criminal cause.

However, the Legislature of this state, by express enactment, has precluded this court from reversing a cause solely because of the erroneous admission or exclusion of evidence unless this court finds, after an examination of the entire record, that the error has probably resulted in a miscarriage of justice, or has deprived the defendant of some constitutional or statutory right. Section 6005, Revised Laws 1910.

In this instance, the witness sought to be discredited was a self-confessed accomplice to the crime. She admitted that the entire plan to rob the First State Bank of Tuskahoma was evolved and concocted in her house, and that she was a party to the scheme, and, according to the terms of the conspiracy was to profit from the proceeds of the robbery. Her entire cross-examination discloses her intimate relationship with Jimmie Adams (Henry Clair). She admits that Adams, or Clair, stayed at her house for a period of six weeks immediately preceding the robbery, and that during that time the robbery was there planned and later carried into execution. She fully detailed to the jury her connection therewith, and made a clean breast of her perfidy. The mere fact that the court did not permit her to testify that she knew that Adams, or Clair, was an ex-convict, in the light of the disclosures made by her could have detracted but little

from her standing before the jury. Her sworn confession of connection with this robbery branded her as a felon, and an associate of felons of the worst type. From that standpoint she stood fully discredited before the jury, whether or not she knew that Adams, or Clair, was an ex-convict.

The conclusion is reached, therefore, that while the subject-matter of the question was a proper one of inquiry on cross-examination for the purpose of affecting the credibility of the witness, the exclusion of the evidence offered cannot be considered a reversible error in this case, in view of the fact that the witness, by her own confession and admissions stood thoroughly discredited by questions asked and answers made on similar subjects of inquiry, so that the error complained of, under the express provisions of section 6005, *supra,* cannot be held to be reversible in this case.

The fourteenth assignment of error is clearly without merit: (1) There was no offer to show that the witness knew that Ben Willis was a escaped convict; (2) on the contrary, the record of the witness' cross-examination discloses that she knew nothing about the antecedents or history of Ben Willis.

The fifteenth assignment of error relates to the cross-examination of one Ben Fitzgerald, a witness for the state, the sheriff of Choctaw county, to whom the accomplice, Ida Rankin, first made her confession. The following question was asked: "Are you expecting a reward should he (defendant) be convicted for this crime?" Counsel for the state objected to the question, and the objection was sustained, to which action the defendant excepted.

There was no offer to prove what the answer of the witness would have been had the court permitted an answer to have been made. The question here involved is considered under the eighth assignment of error, *supra*. Furthermore, it may be stated that the court permitted the witness Fitzgerald to be examined upon the question of a reward in the event of the conviction of the defendant, and the witness had previously testified that he had received no promise of any reward in the event of the conviction of this defendant. As to whether he expected to receive a reward in the future where no promise of any had been made to him was extremely speculative, in view of the fact that no question was asked as to whether any reward had been offered for the conviction of the defendant, and the action of the court in sustaining the objection to the question under such circumstances was clearly not erroneous.

It is also contended that the trial court erred in overruling the application and motion of the defendant for a continuance of said cause. This application is based on the action of the county attorney in indorsing the name of Ida Rankin, a codefendant, on the information as a witness to be used in chief against this defendant. The name of Ida Rankin was indorsed on the information on the day the case was called for trial, and the defendant claimed that he was surprised thereby, and that the witness Ida Rankin had theretofore at all times claimed that she knew nothing incriminating against the defendant Winfield; that since her name had been indorsed on the information, counsel for the defendant had learned from the witness Ida Rankin that she expected to swear to enough facts against this defendant to convict him, and

that if given an opportunity, the defendant could produce witnesses to disprove the testimony of Ida Rankin, and also could get witnesses to show that the said Ida Rankin was angry with the defendant and his wife, and was thereby personally prejudiced against this defendant.

The record shows that the only witness named by the defendant by whom he expected to contradict the witness Ida Rankin as to any specific testimony of said witness directly connecting this defendant with the commission of the crime was one Gus Ashley, and it appears that the said Gus Ashley was produced and testified in behalf of the defendant. It also appears that other witnesses were produced by the defendant, who testified to statements made by the witness Ida Rankin, which were denied by her, showing her animosity against the defendant and his wife, so that the action of the court in denying the application for a continuance did not operate to deprive the defendant of the evidence which he stated he could obtain had the continuance been granted.

Applications for a continuance are addressed to the sound discretion of the trial court, and a conviction will not be reversed because the trial court overruled such an application, unless a manifest abuse of such discretion appears. *Reed v. State*, 14 Okla. Cr. 651, 174 Pac. 800.

As this record discloses that the defendant was able to produce the only witness named in the application for a continuance by whom he expected to prove facts contradicting the said Ida Rankin, and also as the record discloses that other witnesses not named in the application were produced to prove the other facts which the defendant alleged could have been proven had a continu-

ance been granted, it is clear that the trial court did no prejudice to the defendant in this instance by overruling the motion for a continuance.

It is also contended that the trial court erred in not reopening the case, after both sides had closed, for the purpose of permitting the defendant to introduce oneDuff Coker as a witness to contradict the witness Ida Rankin.

It was within the discretion of the trial court to reopen the case for this purpose; and, unless a clear abuse of discretion appears, no question is presented for review on appeal. *Fred Felice v. State,* 18 Okla. Cr.—, 194 Pac. 251; *Shires v. State,* 2 Okla. Cr. 89, 99 Pac. 1100; *Hampton v. State,* 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N. S.) 43; *Wood v. State,* 11 Okla. Cr. 176, 144 Pac. 391; *Dix v. State,* 15 Okla. Cr. 559, 179 Pac. 624; *Tingley v. State,* 16 Okla. Cr. 639, 184 Pac. 599.

After the close of the case, the defendant offered to introduce the testimony of Duff Coker, and in the offer stated that the defendant knew nothing about the fact that the said Duff Coker would testify to certain matters contradictory of the witness Ida Rankin until 9 o'clock of the morning of the day on which the witness was offered; that defendant learned of such fact from one of his counsel, and thereafter immediately proceeded to have the said witness called by telephone at his residence at Ft. Towson, Okla., a distance of 35 miles from the city of Antlers, the place of the trial; that the said witness immediately responded, but arrived in court after the case had been closed by both sides.

There is no showing as to how long counsel for the defendant had known of the facts which, it is alleged, the

said Duff Coker would testify to. We are of the opinion that no manifest abuse of discretion is, shown by the action of the trial court in refusing to reopen the case to permit the defendant to introduce this witness in his behalf, for the reason that no reasonable diligence is shown to procure the attendance of the witness at an earlier time, and for the further reason that the evidence offered is cumulative of other evidence adduced by the defendant tending to contradict the witness Ida Rankin.

It is also contended that the trial court erred in refusing to instruct the jury to return a verdict of not guilty, because the evidence is insufficient to sustain the conviction. The conviction is based largely upon the testimony of Ida Rankin, a self-confessed accomplice to the crime, and it is here contended, that the statute requiring the testimony of an accomplice to be corroborated by other evidence tending to connect the defendant with the commission of the crime is not met in this case.

In the case of *Moody v. State*, 13 Okla. Cr. 327, 164 Pac. 676, this court held:

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only."

Furthermore, it has been held:

"If the evidence offered in corroboration of an accomplice tends to connect the accused with the commission of the crime, its sufficiency is for the jury to decide." *Alderman v. Territory*, 1 Okla. Cr. 562, 98 Pac. 1026; *Hill v. Territory*, 15 Okla. 213, 79 Pac. 757; *McGill v. State*, 6 Okla. Cr. 512, 120 Pac. 297.

An examination of the record in this case discloses circumstantial evidence which tends strongly to connect

the defendant with the commission of this crime, and also contradictory statements on his part which are indicative of guilt.

The trial court instructed the jury that the witness Ida Rankin was an accomplice, and that no conviction could be had on her testimony alone, that her testimony must be corroborated by other evidence which tended to connect this defendant with the commission of the crime. We think the court fully and fairly covered the law applicable to an accomplice's testimony, and the necessity of the corroboration of such a witness, in the instructions given in this case. The question of the sufficiency of the corroboration, the court having instructed the jury properly as to the law, was exclusively the province of the jury, and this court is not authorized to substitute its judgment for that of the jury under such circumstances.

Finding no error in the record sufficiently prejudicial to authorize a reversal of this judgment, it is the opinion of the court that the judgment of the district court of Pushmataha county in this case should be affirmed; and it is so ordered.

DOYLE, P. J., and ARMSTRONG, J., concur.