## DAVE NOWLIN v. STATE.

No. A-7603.   Oct. 2, 1931.
(1 Pac. [2d] 916.)

Anglin & Stevenson and Billingsley & Stanley, for plaintiff in error.

J. Berry King, Atty. Gen., and Ed Crossland, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Seminole county of manslaughter in the first degree, and was sentenced to serve a term of 5 years in the state penitentiary.

At the time of the homicide, defendant was a special deputy sheriff of Seminole county. With some other officers he at night went to the Carter Camp, a few miles north of Seminole, to a tent where Hayden, Story, and Bottoms were at the time drinking beer which Bottoms had brought there. The officers arrested them and took them outside the tent. Deceased started to run, and defendant pursued him, threw a searchlight on his back, and shot him as he ran. The testimony may be condensed as follows:

"Thurman Story testified that he saw defendant shoot the deceased; that at that time deceased was running away from defendant and was about 30 steps east of him when the shot was fired.

"L. A. Hayden testified: I looked towards the ice house and Bottoms was standing with his hands folded, the other officers said: 'See what he has in his hand' and Nowlin looked in his hand and saw that he didn't

have anything and he looked up and Bottoms broke to run and he jumped and took right after Bottoms. Nowlin had a flash light in one hand and drew a pistol as he pursued Bottoms.

"A. J. Mahaffey testified: The Bottoms boy broke and run around the ice house; ran east; saw Dave Nowlin fire shot; boy about 30 or 40 feet from him when he shot. Bottoms fell when the shot fired.

"W. T. Mahaffey testified that he saw Dave Nowlin and Bottoms at the time Nowlin shot him. Dave Nowlin was south of the ice house and the boy was running east. The boy fell when he was shot. They were about 30 feet apart when the shot fired.

"Dr. W. E. Jones testified he examined the body of Bottoms and probed the wounds; that the shot entered his body slightly to the left of his spine. Saw no powder burns."

Defendant admits firing the fatal shot. His testimony in substance is that, after Hayden, Story, and Bottoms were outside the tent and defendant was searching Bottoms, they got into a scuffle, and Bottoms attempted to strike defendant with something he took to be a knife, and that he shot in self-defense. There were several eye-witnesses, and, except the defendant, all testify in substance that defendant shot deceased while he was running from him.

The first assignment is that the court erred in permitting the witness Anna Nusko, since her name was not served on the defendant two days before the trial as required by article 2, § 20, State Const., to testify in rebuttal concerning matters which were a part of the case in chief. This witness was first called in chief. Objection was made that her name was not indorsed on the information. The county attorney then stated he had served the list of the witnesses with their post office addresses. Defend-

ant's counsel then objected that they had not been served with the name of this witness. Neither side produced the officer's return or the list of the names served, and no one testified the name of this witness was served or was not served. The court then directed that she be called in rebuttal, which was done, and the witness testified. This witness was a trained nurse, having had experience in the hospital service during the World War, and attended deceased at the hospital after he was shot. She testified in reference to the location and nature of the wounds on the body of deceased. She was also one of the witnesses who testified at the preliminary. Her testimony was cumulative. If the name of the witness was served, the fact that her name was not indorsed on the information would be immaterial. Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029; Rich et al. v. State, 51 Okla. Cr. 418, 1 Pac. (2d) 805. There should have been a showing made so the court could determine whether or not the name of this witness had been served. The burden is on one who asserts error to show by the record that the error was committed.

The constitutional provision that in capital cases the names of the witnesses to be used in chief with their post office addresses shall be served on the accused at least two days before the trial is not to be evaded by withholding the names of witnesses who should be used in chief and using them in rebuttal, but the order of trial fixed by section 2687, Comp. Stat. 1921, must be observed. Nor will the state be permitted to rehash in rebuttal the testimony in chief by using witnesses which should have been called in chief. Hardesty v. People, 52 Colo. 450, 121 Pac. 1023; State v. Hunsaker, 16 Or. 497, 19 Pac. 605. The testimony of this witness, under a strict application of the rule, should have been introduced in chief. The

rule is not so important where the witness testified in the preliminary or where his testimony is cumulative. The trial court is not divested of all discretion by reason of the constitutional and statutory provisions. When the state proved the commission of the homicide by defendant, under circumstances showing that it was not justifiable or excusable, the burden of proving mitigation, justification, or excuse then devolved on him. Section 2719, Comp. Stat. 1921. Defendant sought to justify the homicide by attempting to show the killing was in self-defense, to prevent apparent danger of great bodily harm to himself at the hands of deceased. The state is not to be precluded from showing in rebuttal that the claimed attack on defendant did not take place, although the testimony might have been introduced in chief in the first instance. Tingley v. State, 16 Okla. Cr. 639, 184 Pac. 599.

Complaint is made of misconduct of the county attorney in asking incompetent and prejudicial questions in cross-examination and by prejudicial statements in his closing argument. Under this assignment several matters are stressed: Frank Grall, a deputy sheriff, who accompanied defendant at the time of the homicide, was asked on cross-examination if there had not been numerous killings by officers while he had been an investigator. An objection was made, then withdrawn. He was then asked touching his relations with Al Hawkins, a witness for defendant. The purport of these questions apparently was to show that the witness and Hawkins and defendant had seized intoxicating liquor on their raids and secreted it for their own purposes and to like improper conduct of the witness as an officer. Some of the questions go beyond proper limits. The court sustained objections to most of these questions. The connection of the witness with de-

174

fendant at the time the homicide occurred and his association and relationship with him generally, within reasonable limits, was a proper subject of inquiry. It would go to his interest, bias, prejudice, or credibility. Questions for this purpose generally are collateral to the main issue; that is, the homicide and its character as being lawful or unlawful. But cross-examination tending to bring out the interest, animus, bias, or prejudice of a witness is not regarded as collateral. Castleberry v. State, 10 Okla. Cr. 504, 139 Pac. 132; Pryor v. State, 37 Okla. Cr. 102, 257 Pac. 335; Brixey v. State, 42 Okla. Cr. 213, 275 Pac. 655. On the other hand, a county attorney may not persistently ask incompetent questions and thus get before the jury by insinuation or innuendo incompetent matters. Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101; Rogers v. State, 8 Okla. Cr. 226, 127 Pac. 365; Scott et ux. v. State, 13 Okla. Cr. 225, 163 Pac. 553. The line of demarcation is sometimes extremely close and is largely a matter of discretion with the trial court. When an appellant contends that this discretion has been abused, the burden is on him. Winfield v. State, 18 Okla. Cr. 257, 191 Pac. 609.

Upon an examination and consideration of the entire record, we are convinced that defendant shot deceased because of his attempt to escape by fleeing. It should be unnecessary to repeat what has often been held by this court, that an officer has no right to shoot at a person arrested or sought to be arrested for a misdemeanor when such person flees. If he does so and kills the person shot at, he is at least guilty of manslaughter.

Finding no reversible error, the case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.