## C. N. SHIRES V. STATE.

No. 256. Opinion Filed February 24, 1909.

(99 Pac. 1100.)

1. **EVIDENCE—Confessions—Independent Proof of Corpus Delicti.**
In a criminal case, a conviction cannot be had on the extrajudicial confessions of the defendant, without evidence aliunde of the corpus delicti, but direct and positive proof of that fact is not indispensable.

2. **TRIAL—Province of Judge and Jury—Sufficiency of Evidence.**
The sufficiency of the evidence to show the commission of the crime and the guilt of the defendant is not a question for the discretion of the court upon a demurrer to the evidence. If there is any evidence to show these facts it is a question of fact for the jury to decide.

3.     **SAME.** The conclusiveness of the facts and circumstances as shown by the evidence in corroboration of the voluntary confessions of the denfendant is not for the court to determine. The court is only concerned in seeing that improper evidence does not go to the jury, and that they are properly instructed on the law of the case.

4.     **SAME—Advising Jury to Acquit.** When the evidence is closed, if the court deems it insufficient to warrant a conviction, it may advise a jury to acquit the defendant.

5.     **CRIMINAL LAW—Definition of Offenses—Common Law.** The definition of an act made an offense by statute, but not defined by it, may be ascertained by reference to common law.

6.     **TRIAL—Reopening Case—Discretion of Court.** When the prosecution rests, and then immediately requests that the case be reopened for the purpose of introducing additional testimony, the granting of the request is a matter wholly in the discretion of the court, and error cannot be predicated thereon.

(Syllabus by the Court.)

*Error from District Court, Custer County; James R. Tolbert, Judge.*

C. N. Shires was convicted of stealing mules, and he brought error to the Supreme Court, whence the cause is transferred to the Criminal Court of Appeals. Affirmed.

C. N. Shires, plaintiff in error (hereinafter designated as defendant), was indicted at the October term, 1908, of the district court in and for Custer county, Okla. T. The charging part of the indictment reads as follows:

"That C. N. Shires, late of the county aforesaid on the 17th day of July, in the year of our Lord one thousand nine hundred and six, in the county of Custer, territory of Oklahoma aforesaid, did unlawfully, willfully, and feloniously, by stealth and fraud, steal, take and carry away from and out of the possession of one John F. Reagan, without the consent of him, the said John F. Reagan, one black horse mule, and one brown horse mule, both branded 'C' on left jaw, and of the total value of four hundred dollars ($400.00), the same being then and there the personal property of him, the said John F. Reagan, with the felonious intent then and there to permanently deprive him, the said John F. Reagan, of said property and possession thereof, and with the

felonious intent then and there to convert the same to the permanent use and benefit of himself, the said C. N. Shires, contrary to the form of the statute in such case made and provided; and against the peace and dignity of the territory of Oklahoma."

Defendant was duly arraigned, and on October 5, 1906, entered a plea of not guilty. At the March, 1908, term of the district court of Custer county, Okla., a trial was had, and on March 19, 1908, the jury returned a verdict of guilty. On the 23d day of March, 1908, having overruled the motion for a new trial, the court sentenced defendant to confinement in the state prison for a term of five years. On June 1, 1908, defendant perfected his appeal by filing in the Supreme Court of the state of Oklahoma his petition in error and case-made, which appeal was there pending when this court was created. It was then duly transferred, as by law provided, by the Supreme Court to the Criminal Court of Appeals, and is now before this court for review on the sole question that the verdict is not supported by sufficient evidence and is contrary to law.

The testimony adduced on the trial shows that defendant was arrested July 21, 1906, at Frederick, Okla., four days after the date of the theft, as alleged in the indictment. At that time he was going under the assumed name of Giles, and was offering the mules in question for sale at public auction. Four witnesses testified on the part of the prosecution.

The testimony of the witness, H. L. Carter, is in part as follows:

"Q. State to the jury, if you can, what he was doing at that time. A. Do you want me to state how I first met him, and what called my attention to him? Q. Yes, sir; you may do that. A. Well, they were selling a span of mules there at Frederick at public auction, and at that time I was buying and selling— By Counsel for Defendant: Objection to anything he was doing. A. Well, I went and looked at those mules to bid on them, and I inquired who the owner was from the man that was auctioning them off, and he looked around some little bit before he pointed him out to me. * * * The auctioneer pointed this man out here

as the man that owned the mules; and I went to him, and inquired about the mules before I bid on them, and talked to him a little bit, and from his answers I decided that the mules were stolen.   *   *   *   I asked him about the mules being sound; and asked him where the mules were from. He told me he got them across the river south in Texas; and I asked him where the mules was raised. He told me they were raised in Hill county, Tex. I asked him who raised them there, that I was born and raised there. and I asked him who raised them there; and his answer was that that was what the man told me, 'a little town across the river.' And I asked him what town, and he could not give me the name of the town. And I asked him then where he lived, and he told me in Wilbarger county. I asked him if he was acquainted at Vernon and he said he was; and I asked him if there was any one there he could give as reference in regard to the title of these mules. He at first said he could, and I left him and sent a party to the justice of the peace to get me a John Doe warrant for this man, and went and notified the man that I had the highest bid on the mules—I think it was $260 or $270. * * * After the mules were knocked off while I was waiting for this warrant, I talked to F. Carter, the present sheriff of Tillman county. He carried the mules up to the wagon yard. They were hitched to a wagon. And I summoned F. Carter to go with me up there and arrest this man, and I went to him in the wagon yard after they had taken the mules out of the harness, and this defendant had given me at the time, I believe, the name of Giles. I am not sure about the name he first gave me, but I think it was Giles. I went to him and arrested him, and told him that I was an officer and from the investigation that the title to the mules did not look right, and, if he knew parties there at Vernon, that he could call up. that I was well acquainted at Vernon, acquainted with the sheriff and most of the citizens there, and he could go and call up any one that he knew, and have them talk to me over the telephone so that I could satisfy myself he could go ahead with the mules. otherwise I was going to place him under arrest. He told me at first he would do this, but never could decide on any one or tell me any name of any party to call up there, and did not go. We placed him under arrest and on searching him found a little memorandum book that he had and found— (Objection.) By the Court: State what you found on him. A. Found papers showing— By the Court: Sustained as to what they contained. *   *   *   A. I told the defendant I was satisfied the name he

had given me was not his right name, and to save me further trouble, as we were 50 miles from the county seat, and had no jail at our town, to save himself trouble and me, that if he would tell me where these mules belonged—in this connection I had warned him I was an officer—and if he wanted to tell me the straight tale about the case, the evidence could be used for or against him in case he was tried, and he went ahead and told me that his name was C. N. Shires and that he had stolen these mules from a camp. 1 do not know whether there was two or three wagons—camp near Clinton, Oklahoma; and I went with him to a phone office and called the sheriff of Custer county to find out if these mules were stolen, and we got a phone message some time two or three or four hours afterwards from Davis that these mules —(Objected to by counsel for defendant. By the court sustained.) A. Well, I held the mules and held Shires until Davis and his deputy came down after him and the mules. I turned Shires and the mules over to Davis, and he paid me the reward that he had offered."

He further testified they were brown or black mules, were both branded "C" on the jaw, and were of the value of from $325 to $375.

The witness F. C. Carter testifies as to the description of the mules; that he was present when the admissions were made by defendant to the witness H. L. Carter; that said admissions were made voluntarily by defendant; that at present witness is sheriff of Tillman county, but at that time he was not an officer.

The witness Barney Davis testified, in part, as follows: That at that time he was sheriff of Custer county. That he arrested the defendant July, 1906, at Frederick, about 100 miles south of Clinton. That he was acquainted with John F. Reagan, the owner of the mules, and saw him in possession of the mules during the months of June and July, 1906, at Clinton, in Custer county, Okla. That one was a brown and one a black mule, both branded "C" on the left jaw. That John F. Reagan drove the mules, called them his mules, and had offered to trade or sell them. That at that time Reagan was running with a harvester and threshing outfit. That, while bringing defendant and the mules back to Clinton by wagon road, defendant voluntarily made the statements

without any promise held out, or inducements of any kind, that he got the mules east of Clinton on the bottom. That he went east on the section line from where he got the mules and a mile north and a mile back west, and then through Arapaho by the Methodist Church, then east to Weatherford, then south from Weatherford. Defendant said that somebody was camped there on the bottom on the road that had a team of horses and the mules, and they 'turned the horses loose and took the mules. Witness learned the next morning after they were stolen that the mules were gone. It was shown by the cross-examination of this witness that the defendant escaped from the Custer county jail in October; that witness re-arrested him at Quanah, Tex., and returned him to the Custer county jail.

J. W. Copely testified in part as follows: That he was the deputy sheriff of Custer county, and went with Sheriff Davis to Frederick to get defendant and the team of mules reported to be stolen from his county.

"Q. State what you did with the mules and Shires. A. On the night of the 23d, I believe it was, we turned the mules over to Mr. Reagan at Clinton in the Taylor wagon yard there. We was on the road home with Shires and the mules. We brought Shires home and put him in jail here at Arapaho. Q. Did Shires make any statements to you or in your presence with reference to the mules? A. Yes, sir. Q. I will ask you, Mr. Copely, if you informed this defendant that you were an officer, if he knew you were an officer at the time? A. I do not know that he heard any more than I was with the sheriff and we had charge of him. Q. Did you make an offer or inducement to him to make statements regarding these mules. A. No, sir. Q. Did you make any threats or hold out any fears as to what would be the result if he did not tell about them? A. No, sir. Q. Mr. Copely, were all the statements made to you by this defendant made by him voluntarily? A. Yes, sir. Q. You may state to the jury what, if anything, he said to you about where he got these mules, or anything about them. A. He said he got these mules down here by Clinton, and that he brought them through Arapaho in the—and, if I remember right, that he come through by the church house to keep out of the main part of town, and that he got into Weatherford the

next morning after he stole the mules in the night, and he had left the wagon somewhere in town, and anyway the statement to me was that he took these mules into an old wagon yard that was not used by anybody, and put them where no one would see them; that on in the day some time he hooked them on to his wagon and drove out, and he told me in the day some time he went through the little town of Roosevelt down here; that the reason he come through Arapaho there was. a show in Clinton, and he thought the show was coming here, and would put his mule tracks out so they could not be trailed by an officer. Q. I will ask you to state what, if anything, this defendant said at Frederick in reference to what his name was. A. If I remember right, I believe it was Giles that he said his name was at first, and later on he said his name was Shires. * * * By the Court: Who is this man Reagan that you turned these mules over to? A. The man who owned the mules. Q. What was his initials? A. 'R. F.' I believe it was, I was not acquainted with him. * * * Q. I believe you said he claimed he stole them in Custer county? A. Yes, sir."

Defendant demurred to the evidence submitted by the prosecution. The demurrer was overruled, and exception allowed. There were no witnesses sworn or testimony offered on the part of the defendant.

*J. C. Caldwell* and *Geo. T. Webster,* for plaintiff in error.—

On question of necessary proof of ownership and non-consent to taking: Underhill on Crim. Ev., p. 354, *et seq*; *State v. Tyler,* 15 Kan. 420; *State v. Storts,* (Mo.) 39 S. W. 483; *Garcia v. State,* 26 Tex. 209; *State v. Osborn,* 28 Iowa, 9; *State v. Morey,* 2 Wis. 494; *Wilson v. State,* 45 Tex. 76; *Clark v. State,* 29 Tex. App. 737.

*Chas. West, Atty. Gen.,* and *E. G. Spilman,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE. (after stating the facts as above). The first assignment of the petition is that the court erred in overruling the demurrer of defendant to the evidence offered by the state, and it is urged by counsel for defendant that the evidence is wholly insufficient to support the verdict. In the argument of this prop-

osition it is claimed by defendant that there was no competent evidence offered that John F. Reagan was the owner of the mules, and that there was no evidence offered that the mules were taken without John F. Reagan's consent, except the admissions as made by defendant.

If we except a few English cases, the authorities are uniform in maintaining the principle that a conviction should not be had on extrajudicial confessions of the defendant unsupported by corroborating facts and circumstances. Proof *aliunde* of the *corpus delicti* is required. While great caution, founded on experience in the administration of the criminal law, should be observed, that a person charged may not be punished for an alleged crime not actually committed, direct and positive evidence of the *corpus delicti* is not indispensable. Like any other fact, the subject of judicial investigation, it may be proved by circumstantial evidence. *George v. U. S.,* 1 Okla. Cr. 307, 97 Pac. 1052; *Winslow v. State,* 76 Ala. 42; McClain on Crim. Law, § 612; 1 Bishop's Crim. Proc. § 1057; 3 Greenl. on Ev. § 30.

In *George v. United States, supra,* this court said:

"In many and perhaps most cases, to support a conviction, direct proof that the property was feloniously taken from the person named in the indictment as the owner is necessary. Yet it is not essential in all cases that there should be any direct evidence upon this point. The application of the rule must always depend upon the facts of the case. Appellate courts should carefully consider and guard against so constructing the law that a proper rule of evidence would be perverted into a means of escape from the merited punishment of an offender."

Under the provisions of our Criminal Code domestic animals as named in the act of 1895 (chapter 20, p. 104, art. 1, § 1, Sess. Laws Okla. 1895) are the subject of larceny if taken under such circumstances as would constitute grand larceny at common law, and the indictment or information need not allege the taking to be against the will of the owner and nonconsent is not necessary to be averred. It is therefore not necessary to prove. Consent of the owner would be simply a matter of defense.; the maximum

penalty being 10 years. However, under the language of this act, the intent to deprive the owner thereof and to convert the same to his (the taker's) own use must be alleged and proved. *Hughes v. Territory,* 8 Okla. 28, 56 Pac. 708; *Sullivan v. Territory of Okla.,* 8 Okla. 499, 58 Pac. 650. A reference to the indictment will show that in this case, although the charge is alone the stealing of animals, it appears the prosecuting attorney in drawing the indictment included allegations of nonconsent to the taking, and that they were taken "with the felonious intent to deprive the owner thereof, and to convert the same to his (the taker's) own use." The crime of larceny under the general statute of 1893 is defined as follows (section 2465, Wilson's Rev. & Ann. St. 1903) : "Larceny is the taking of personal property accompanied by fraud or stealth, and with the intent to deprive another thereof"—the maximum penalty being five years. Thus it will be seen that the Legislature in defining the offense has modified the meaning of the word "larceny" as used at common law; so that the taking of personal property accompanied by fraud or stealth, and with intent to deprive another thereof, is larceny, regardless of whether or not it was taken for the purpose of depriving the owner thereof, or for the purpose of converting it to the use of the taker. The charge contained in the indictment in this case is somewhat redundant. It appears that the pleader intended to charge the offense of larceny under the Act of 1895, but the court properly held that the offense as charged was a violation of the general statute. Under any view of the case, we are of opinion that the court properly overruled the demurrer to the evidence. The facts and circumstances proved sufficiently corroborate the voluntary confessions of the defendant to make sufficiency of the proof a question for the jury alone. The proper practice under our procedure where there is any evidence that the crime has been committed, and that it has been committed by the accused, and by none other, is to move the court to direct a verdict on the ground that the evidence is insufficient to warrant a conviction.

2 Cr.—7

Under the provisions of section 5509 (Wilson's Rev. & Ann. St. 1903), in any event, the sufficiency of the evidence is a question for the jury, and not for the court. In this case we believe the evidence is sufficient to sustain the verdict. The facts and circumstances proved show that the larceny charged was committed, and that John F. Reagan was the owner of the stolen mules. At that time he was near Clinton with a threshing outfit, and the stolen mules were returned to him by the sheriff in the presence of the defendant. It is argued that the testimony of the witness Copely shows that the mules were delivered to R. F. Reagan, and that this is a fatal variance. This objection is not well taken Under the provisions of our Criminal Code the question of ownership in cases of larceny is of much less importance than it was under the common law. Section 5362 (Wilson's Rev. & Ann. St. 1903) provides as follows:

"When an offense involves the commission of an attempt to commit a private injury, and is described with sufficient certainty in other respects to identfy the act, an erroneous allegation as to the person injured, or intended to be injured is not material."

*Martin v. Territory of Okla.,* 4 Okla. 105, 43 Pac. 1067; *Hurst v. Territory of Okla.,* 16 Okla. 600, 86 Pac. 280. The record shows that three days after the theft the defendant was found in the possession of the mules 100 miles from where they were stolen, and was then trying to sell them. The reward was paid, and the mules returned to the owner, at Clinton, in defendant's presence. He makes several voluntary confessions describing where he took the mules from, and how he concealed the stolen property to avoid detection, and how he traveled in going to the place where he was apprehended. Under such circumstances Prof. Greenleaf says:

"It is generally agreed that deliberate confessions of guilt are among the most effectual proofs of the law." (1 Greenl. on Ev. par. 215.)

We believe that the evidence is far from insufficient. It is ample to show ownership, nonconsent, felonious taking, and intent, value, and venue, and supports each allegation of the indict-

ment—this in addition to the voluntary confessions of the defendant. Therefore we have no hesitancy in saying that the facts and circumstances thus shown prove the commission of the crime, and carry conviction of the defendant's guilt.

The instructions given by the court are commendably complete, and fully, fairly, and correctly state the law on every feature of the case. No other instructions were requested, and no objection was made to the instructions as given. Objection is made, and it is assigned as error, that the state, having rested its case on the evidence, immediately requested that the case be reopened for the purpose of permitting the state to introduce additional testimony as to the ownership of the mules. The court granted this request, and the testimony was offered over the objection of the defendant. This was a matter wholly in the discretion of the trial court, and error cannot be predicated thereon. Having carefully examined the entire record, we find no prejudicial error therein. Upon this record a fair and impartial trial was had, and no mistake was made in convicting the defendant.

The judgment of the district court of Custer county is hereby affirmed, and the court below is directed to proceed, without delay, to cause the judgment and sentence to be carried into execution.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur