### GUS KEY v. STATE.

No. A-4353. Opinion Filed Jan. 19, 1924.
(221 Pac. 1048.)

(Syllabus.)

**Intoxicating Liquors—Evidence Insufficient to Sustain Conviction for Unlawful Possession.** Evidence, on a prosecution for having possession of one pint of whisky with unlawful intent, held insufficient to sustain a conviction.

Appeal from County Court, Carter County; M. F. Winfrey, Judge.

Gus Key was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed.

Charles A. Coakley and Thos. Norman, for plaintiff in error.

George F. Short, Atty. Gen., and J. Roy Orr and N. W. Gore, Asst. Attys. Gen., for the State.

DOYLE, J.  Appellant, Gus Key, was tried upon an information charging that he did have in his possession one pint of whisky with the unlawful intent to sell the same. The jury returned a verdict finding him guilty and fixing his punishment at a fine of $100 and confinement in the county jail for 60 days.  He has appealed from the judgment rendered upon such conviction.

The first contention is that the evidence is insufficient to sustain the verdict.

W. R. Highnight, chief of police, testifies:

"I had Mr. Simms go upstairs in the Moose Hall; Mr. Hathcock to go across the street; and I told Mr. Fraley to call Mr. Key; I witnessed the call, and answers the best I could; Mr. Fraley called, he said, 'Is this six,' so Fraley just told him that this was 'six at the Moose Hall.' In a few minutes Mr. Sims came up with the whisky.  Mr. Sims is dead. I did not see Mr. Key at any time between the phone call until he came and made bond."

Creed Fraley testifies:

"I did the calling.  Called number six and talked to somebody.  I did not talk to Mr. Key; I think it was Carry Smithers.  The Moose Lodge is a couple of doors down from the Diamond drug store; I was in the police station; Mr. Sims came first; in a few minutes Mr. Key came, and put up bond."

Charley Hathcock testifies:

"We had it fixed to watch him; Mr. Sims was to go upstairs; Creed Fraley to call him.  I was standing across the street.  Key came out of the drug store and went upstairs; I stayed where I was.  In four or five minutes both came down; Mr. Sims went to the police station.  Mr. Key went to get

his coat; I did not see him with anything. To the best of my knowledge, a four-ounce bottle was brought to the police station. Mr. Simms is now dead. I heard Mr. Key's statement in the police court. I don't remember his testimony; I believe he said Sims poked his gun in his ribs, and told him to stick them up, and pulled a bottle out of his bosom. He said he did not know what it was; he made some remark that Mr. Sims put this whisky on him; that he did not have the whisky. He said that he was not guilty.''

On cross-examination:

''He made some kind of a statement around there in the city court. All I know is what Sims told me; that's all.''

The state rested, and defendant demurred to the testimony on the ground that the same is insufficient to prove the commission of any offense, and asked the court to instruct the jury to return a verdict of acquittal, which the court refused to do. Exception reserved.

As a witness in his own behalf, defendant testified:

''I did not testify or make any statement about this transaction in the police court or the federal court. A phone call came; some one answered. I started to the Moose Hall in my shirtsleeves. I was about half way up the stairs when Officer C. J. Simms said, 'Stick 'em up.' I said, 'What do you want?' He reached in his pocket and pulled out this bottle; I said, 'Sims, this is the dirtiest deal you ever done in your life.' I went around to the station about 15 minutes afterwards. They had me charged with being drunk and disturbing the peace; I did not carry any whisky or anything of an intoxicating nature when I left the drug store; I did not see anybody except Sims. I deliver soda fountain drinks to any place that orders. I did not make a statement anywhere that Sims took this off of my person. He did not get it off me.''

It is insisted that ''there is absolutely no proof of the corpus delicti, which in this case would be the actual posses-

sion by defendant of whisky; that neither of the three witnesses testified that they saw any whisky, much less any whisky in defendant's possession, or that Sims took any whisky off of Key."

To warrant or sustain a conviction there must be evidence sufficient to prove that the offense was committed. This court has held that in a criminal case a conviction cannot be had on the extrajudicial confessions of the defendant, without evidence aliunde of the corpus delicti, but direct and positive proof of the corpus delicti is not indispensable; like any other fact the subject of judicial investigation, it may be proved by circumstantial evidence. Shires v. State, 2 Okla. Cr. 89, 99 Pac. 1100; Choate v. State, 12 Okla. Cr. 560, 160 Pac. 34, L. R. A. 1917A, 1287.

It is made the duty of the trial court, where it deems the evidence insufficient to warrant a conviction, to advise the jury to acquit. Section 2713, Comp. Stats. 1921.

Under this section the defendant may present to the court his right to an acquittal as a matter of law for its ruling and decision, whether the evidence is of such a character or quality as to warrant a conviction. If this was not the rule, the jury would in all cases be the sole judge of the question.

Carefully considering the state's testimony in this case, we think the court erred in overruling the demurrer to the evidence, and in refusing to advise the jury to return a verdict of acquittal. Because of the insufficiency of the evidence, the judgment is reversed.

MATSON, P. J., and BESSEY, J., concur.