## CARL SMITH et al. v. STATE.

No. A-7216.   Opinion Filed April 26, 1930.
(287 Pac. 835.)

Billingsley & Stanley and Hill & Banta, for plaintiffs in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiffs in error, hereinafter referred to as the defendants, were, by information filed in the district court of Seminole county, charged that the defendants did then and there unlawfully, willfully, and feloniously make a connection with a certain tank and pipe line used for the storage and conduct of gas, crude oil, naphtha, and casinghead gas, the property of the Magnolia Petroleum Co., a corporation; they were convicted, and the defendant Carl Smith was sentenced to be confined in the state penitentiary at McAlester, for a term of one year and six months, and the defendant L. B. Northcutt was sentenced to be confined in the state penitentiary

at McAlester, for a period of one year. From the sentence and judgment, the defendants have appealed to this court.

The testimony on behalf of the state is in substance as follows: Charles L. Gladden testified he was superintendent of the Magnolia Petroleum Company, a corporation, for the Wewoka district; he had been superintendent for eight years; he had known Carl Smith for about three years, and Northcutt for about two years; the gasoline plant, that is involved in this controversy, is located in 32—8—8, back of the cemetery. The defendant Carl Smith was working for the Magnolia Company on the first of May, 1927; the defendant Northcutt had not been with the company for four or five months; the defendant Smith was working in the capacity of engineer in the gasoline plant. "On May 1st, and prior to that time, there had been considerable shortage at the gasoline plant and I made an investigation; I had received information that the defendants were taking gasoline from the plant; I waylaid the gasoline plant several nights; I saw Mr. Smith take gasoline from the gasoline tank and place it in the tank in the rear end of a Ford coupe; he carried the gasoline away from the plant."

The testimony further shows that after the defendants were arrested, Charles L. Gladden had a conversation with the two defendants, in which the defendant Smith told him he got the gasoline out of a one-fourth inch connection on the tank used for taking samples. Mr. Northcutt said Mr. Smith furnished the gasoline and he took it to Mr. Morgan's filling station and sold it and divided the money fifty-fifty.

The testimony further shows that at different times the defendants, or one of them, had been selling small quantities of gasoline to the Morgan filling station. The

only question which tends to connect the defendants with the taking of the gasoline from the tank of the Magnolia Petroleum Company, a corporation, is the alleged statements made to the superintendent of the company, Charles L. Gladden.

At the close of the state's testimony, both of the defendants demurred to the evidence of the state for the reason that it was wholly insufficient to sustain the allegations in the information. The demurrer was considered by the court and overruled, and each of the defendants reserved an exception to the ruling of the court.

The defendants, in their twelfth assignment, contend that the court erred in refusing to instruct the jury to return a verdict of not guilty, because of a fatal variance between the allegations and the proof. A careful reading of the evidence in this case discloses the fact that Mr. Gladden, the superintendent of the Magnolia Petroleum Company, a corporation, testified to one fact within his knowledge, and that was the larceny of the gasoline from the tanks of the Magnolia Company, on the night of the arrest of the defendants. The witness made no contention that any connection was made to their tank or any pipe line on that occasion. The specific charge in this case is, "Tapping a pipe line." We cannot find any evidence, in the record, tending to establish the fact that a connection was made with any pipe line or tank by either of these defendants, except what purports to be an extrajudicial confession of the defendants. The evidence tends to show that the defendants told the witness Gladden, after their arrest, that they did put a rubber hose on the vapor line which connects with the storage tank, and by putting pressure on the storage tank caused gasoline to flow through the rubber hose into the tank in the back of the car.

The Attorney General in his brief makes the following statement:

"The Attorney General has carefully considered all the evidence in this case and has been unable to find any, either direct or circumstantial, other than the extra-judicial confessions of these defendants that tends to prove the corpus delicti of the crime for which they were convicted. There is ample evidence to sustain a larceny charge, but as we construe this evidence there is nothing shown, outside of the admissions and confessions of the defendants that proves any tapping or connecting by them with a storage tank or pipe line. The nearest approach to it, in our opinion, is the testimony of the witness Marsh that Smith took him to the plant and showed him just where and how the connections were made, etc., but Marsh does not testify to any independent evidence of any such connection other than what Smith told him. In other words, there was no evidence by Marsh that he could tell a connection ever had been made except that Smith told him there had been one made. There was no physical evidence of a connection.

"No rule of law is more thoroughly established in this jurisdiction than that a conviction may not be had on the extrajudicial confession of a defendant, without evidence aliunde of a corpus delicti. Shires v. State, 2 Okla. Cr. 89, 99 Pac. 1100; Choate v. State, 12 Okla. Cr. 560, 160 Pac. 34, L. R. A. 1917A, 1287; Waide v. State, 13 Okla. Cr. 165, 162 Pac. 1139; Henry v. State, 14 Okla. Cr. 189, 169 Pac. 658; Boyle v. State, 27 Okla. Cr. 196, 226 Pac. 389.

"One of the material elements of the offense of which these defendants were convicted was the tapping or connecting with a pipe line or storage tank used for conduct or storage of crude oil, etc. In view of the fact that no such tapping or connecting was proved in this case independent of the extrajudicial confessions of these defendants, the Attorney General has reached the conclusion that the evidence is, in law, insufficient."

The confession of the Attorney General is approved, as an examination of the record clearly shows there is no testimony independent of the extrajudicial confession to sustain a conviction.

In view of the fact that this case will probably be tried again, it is deemed necessary to pass upon the question raised by the defendants on the constitutionality of the act under which they were tried and convicted. This prosecution is based on section 1, c. 105, Session Laws 1925. The title to said act is as follows: "An act prohibiting the unlawful connecting to or tapping of any pipe line or other conduit through which crude oil, naphtha, gas, casinghead gas or any of the products thereof is transported, and declaring such acts to be felonies, and prohibiting the unlawful taking of any crude oil, gas or gasoline from any pipe line or receptacle in which same is being collected or transported, and declaring such acts to be misdemeanors, and fixing a punishment for the violation thereof, and declaring an emergency."

Section 57, art. 5, of the Constitution of Oklahoma, provides as follows:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

It is urged, by the defendants, that under the Constitution, the title of an act of the Legislature must contain

but one subject, and the defendants insist that the statute under which they were prosecuted clearly contains two subjects: First, the tapping of pipe lines, and second, the larceny of crude oil and its manufactured and natural products; and the defendants further insist that the act is unconstitutional, for the reason that one of the objects of the act is to make a felony of certain acts, and the second subject or object is to make a misdemeanor of certain other unrelated acts. No authorities, other than section 57, art. 5, supra, are cited to sustain the position of the defendants that the act is unconstitutional for the reason that it embraces more than one subject in the title of the act. The intention of the Legislature, in the passing of this act, evidently, was for the protection of crude oil, gas, etc., in storage tanks or pipe lines. Section 1 of the act makes it a felony, or makes the connecting with tanks or pipe lines used to conduct or store crude oil, with the intent to deprive the owner thereof, of such products, a felony. Section 2 makes it a crime to take crude oil, or gasoline, or products thereof from any pipe line, tank, or receptacle, or container with intent to deprive the owner thereof.

In State v. Coyle, 7 Okla. Cr. 50, 122 Pac. 243, this court said:

"Every legislative act is presumed to be constitutional, and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained."

In the case of People v. Sacramento Drainage District, 155 Cal. 373, 103 Pac. 207, 208, the Supreme Court said:

"The purpose of Const. art. 4, § 24, declaring that every act shall embrace but one subject, which shall be expressed in its title, was not to hamper legislation, but to check and prevent deception therein."

In State v. Kolsem, 130 Ind. 434, 29 N. E. 595, 598, 14 L. R. A. 566, the Supreme Court of Indiana said:

"If the title covers a general subject the act is valid, no matter how minutely it may go into details germane to that general subject."

The Supreme Court of Oregon, in State v. Miller, 54 Or. 381, 103 Pac. 519, held:

"That a provision in an amendment to the act providing a board of pharmacy and the registration of pharmacists and regulating the sale of poisons which provided for the licensing itinerant vendors of drugs did not violate the section of the Constitution requiring every act to embrace one subject, which must be expressed in the title."

There are many cases in support of this doctrine. In Griffin et al. v. Thomas, 86 Okla. 70, 206 Pac. 604, 609, the court in discussing constitutional provisions such as section 57, art. 5, supra, in 25 R. C. L. § 88, p. 842, quoted with approval the following:

"The term 'subject,' as used in these provisions, is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. This constitutional provision does not contain any limitation on the comprehensiveness of the subject, which may be as comprehensive as the Legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several; it may include innumerable minor subjects, provided that all the minor subjects, when combined, form only one general subject or topic."

And in section 90, p. 844, Id., it is said:

"The 'subject' of an act is the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head. There can be no surer test of compliance with the constitutional requirements of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title. An act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act, or when the provisions of the act are of the same nature and come legitimately under one subject." Rea, County Clerk, v. State ex rel. Board of County Commissioners, Lincoln County, 29 Okla. 708, 119 Pac. 235; State ex rel. Caldwell v. Hooker, 22 Okla. 712, 98 Pac. 964; Dunlap v. Board County Commissioners, Carter County, 85 Okla. 295, 205 Pac. 1109.

The provisions of the act under consideration in this case are germane to each other and properly come under the subject of protection and theft of crude oil, gas, etc., while in storage and in pipe lines. We, therefore, reach the conclusion that the contention of these defendants, that the act under which they were informed against and tried was unconstitutional, is without merit. For the reasons heretofore stated, that the testimony fails to sustain the allegations, the confession of error of the Attorney General is approved, and the case reversed and remanded for further proceedings not inconsistent with this opinion.

EDWARDS, P. J., and CHAPPELL, J., concur.