## JOHN BROWN v. STATE.

No. A-10488. Dec. 5, 1945.
Concurring Opinion on Rehearing, Feb. 27, 1946.
(164 P. 2d 249; 166 P. 2d 1021.)

O. A. Brewer, of Hugo, for plaintiff in error.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Ralph K. Jenner, Co. Atty., Choctaw County, of Hugo, for defendant in error.

BAREFOOT, P. J. Defendant, John Brown, was charged in the county court of Choctaw county with the crime of driving a motor vehicle while under the influence of intoxicating liquor. He waived a jury, was tried before the court, found guilty and his punishment assessed at a fine of $50 and costs. From this judgment and sentence he has appealed.

A motion filed by the state to dismiss the appeal for the reason that brief had not been filed within the time allowed by the rules of the court, and that the appeal was frivolous and for delay only, has been examined and considered, and we are of the opinion that the motion should be denied. A brief was filed by the defendant on September 3, 1944, and long before this case was reached for consideration.

A number of assignments of error are presented, but we are of the opinion that they may all be considered under the assignment:

"That the verdict is contrary to law and the evidence, and is wholly insufficient to sustain the judgment and sentence."

Only one witness was presented by the state, and the defendant placed no witness upon the stand.

We deem it advisable to quote the whole of the testimony of the one witness, L. D. Rhodes:

"Q. Your name is L. D. Rhodes? A. Yes, sir. Q. What official position do you hold in the state? A. I'm a trooper with the State Highway Patrol. Q. Do you know the defendant, John Brown? A. Yes, sir. Q. Did you see him on the 9th of October, 1943? A. It was on the 10th, I believe. Q. It was on or about that time that you saw him? A. Yes, sir. Q. Where did you see him? A. About one-half mile south of Grant, on the turn, just

south of the underpass, on U. S. Highway 271. Q. What was the occasion for you going there? A. There had been an accident reported down there and I went to investigate it. Q. What did you find there? A. There was an auto sitting on the right side of the road next to a post and John was in another car that was on the north side of the highway facing west, on the opposite side of the highway. with clearance between for traffic. Q. John's car was facing west? A. Yes, sir. Q. John's car was on the north side of the highway? A. Yes, sir. When I got there John was sitting in his car and the people in the other car, two of them were named Holley and I don't remember the names of the others, they were in front of their car. I went thru the regular procedure, I took down their names and filled out my report. I called their car number one. I went to John's car and asked him to get out and he did, he was unsteady on his feet and I asked him to stand in front of the car while I searched his car. He was unsteady on his feet. He began to tell me how to prevent these accidents, and he said, 'Johnnie had had several drinks,' and he said 'you know how it was,' and I asked him why he was there in that condition and he said he had been to Grant and that his wife had been driving, and he said he got in the car and was coming back to town, I brought him to town. It was about 5:30 when I got there and I brought him to town about 7:30. He was still *woosie* on his feet then. Q. He said he had driven from his place to the scene of the accident? A. Yes, sir. Q. He was under the influence of liquor? A. Yes, sir. By Mr. Jenner: That is all. Cross-examination by Mr. Brewer: Q. All you know about it is what he told you? A. I know he was under the influence of liquor. I don't know how far he had driven. Q. You don't know whether he had taken the drink after the accident or before? A. At the time of the investigation Mr. Holley said he was drunk. By Mr. Brewer: We object to what Mr. Holley said. By the Court: Overruled, exceptions allowed. A. At that time I had not been to his car and he was not trying to get away. Q. Was he shaken up a bit? A. He had a bruise

on his head. Q. There was blood on his head? A. It was a blue spot on his head. Q. You don't know how long it had been since the accident happened when you got there? A. They said it had been about 15 minutes. Q. Did John tell you that? A. No, sir. Q. In all your investigation, did he tell you it would not have happened if the steering gear had not broken? A. No, sir. Q. You don't know whether he was drinking at the time of the accident except what he told you? A. At the very minute of the accident I could not tell, but I can say he was drinking in 15 minutes from the time of the accident. By Mr. Brewer: That is all. By Mr. Jenner: Q. Why did he say they had an accident? A. He told me 'Johnnie does not have these accidents' and I *ask* him why he had this one and he said 'if Johnnie had not had several drinks he would not have had this accident.' By the Court: Q. He admitted he had several drinks? A. Yes, sir. Q. Do you think he told you the truth about the accident? A. Yes, sir. By Mr. Jenner: State rests."

It is the contention of the defendant that the answer of the witness in the following testimony should have been stricken:

"Q. You don't know whether he had taken the drink after the accident or before? A. At the time of the investigation Mr. Holley said he was drunk. By Mr. Brewer: We object to what Mr. Holley said. By the Court: Overruled, exceptions allowed."

This testimony was clearly hearsay, and should have been stricken by the court.

It is also contended that under the law, corpus delicti in a criminal case cannot be established by the confession alone, but there must be independent evidence direct or circumstantial of corpus delicti before a conviction can be sustained; and that this rule of law has application to the facts here presented.

This contention is based upon the testimony of the witness Rhodes when he testified that defendant said to

him: "Johnnie does not have accidents." And, further: "And I asked him why he had this one, and he said, 'If Johnnie had not had several drinks he would not have had this accident.'"

The above rule of law has often been announced by this court. Phenis v. State, 76 Okla. Cr. 156, 135 P. 2d 62; Lake v. State, 59 Okla. Cr. 280, 57 P. 2d 1199.

The record does not disclose or give any intimation as to why only the witness Rhodes was placed upon the witness stand in this case. He was not present at the time of the collision, and did not see the defendant operating the automobile. The parties who were in the other car were not placed upon the stand. The witness Rhodes testified that the defendant was under the influence of intoxicating liquor. This was evidently his opinion, and the only facts testified to were that defendant was "unsteady on his feet"; and, "He was still woozy on his feet then." No doctor was called to examine defendant, and no officer or other person was presented who saw him when he was brought to town. The following question was asked the witness:

Q. You don't know whether he was drinking at the time of the accident, except what he told you?" And he answered: "A. At the very minute of the accident I could not tell, but I can say he was drinking in 15 minutes from the time of the accident."

Just how the witness could have known that the defendant was drinking 15 minutes from the time of the accident is hardly understandable.

Taking the record in this case as a whole, after elimination of the hearsay testimony, we are of the opinion that it was insufficient to sustain the conviction. The circumstances may have been sufficient to warrant the

court in reaching the conclusion that the defendant was driving the car at the time of the collision; but the evidence that defendant was under the influence of intoxicating liquor at the time of the collision is almost wholly dependent upon the statement of defendant as above set forth, and the opinion expressed by the one witness, Rhodes, which is based upon very meager facts.

The statement of counsel that the facts in this case are not as strong as in the case of Phenis v. State, supra, and Lake v. State, supra, is true, and both of those cases were reversed.

For the reasons above stated, the judgment of the county court of Choctaw county is reversed and remanded.

JONES, J., concurs. DOYLE, J., not participating.

### On Rehearing.

DOYLE, J. (concurring). Among the alleged errors assigned for reversal is that there is no sufficient proof of the corpus delicti.

It is contended that the proof of the corpus delicti is based solely upon the extrajudicial confession of the defendant.

To prove the offense charged the state relied wholly upon the testimony of L. D. Rhodes, in substance as follows:

"I'm a trooper with the State Highway Patrol. I saw the defendant about one half mile south of Grant, there had been an accident reported, I went there to investigate it, there was an auto on the right side of the road and John was in another car on the opposite side of the highway with a clearance between for traffic. John was sitting in his car and the people in the other car were named Holley. I went to John's car and asked him to get out and stand in front of the car while I searched his car, he was unsteady on his feet. He began

to tell me how to prevent these accidents and he said, 'Johnnie had had several drinks' and he said 'you know how it was," and I asked him why he was there in that condition, and he said he had been to Grant, and that his wife had been driving, I brought him to town."

He was then asked by the county attorney:

"Q. He said he had driven from his place to the scene of the accident. A. Yes, sir. Q. He was under the influence of liquor? A. Yes, sir. By Mr. Jenner (county attorney) : That is all."

Following the cross-examination the record is as follows:

"By the Court: Q. He admitted he had several drinks? A. Yes, sir. Q. Do you think he told you the truth about the accident? A. Yes, sir. By Mr. Jenner: State rests."

In every criminal prosecution the burden rests upon the state of proving the corpus delicti beyond a reasonable doubt.

It is well settled that extrajudicial confessions are those which are made by the defendant out of court, whether to an official or nonofficial person, and such confessions in order to be admitted must be entirely free and voluntary.

Under our Code of Criminal Procedure, Tit. 22, sec. 952, subdivision Sixth, a new trial shall be granted:

"Sixth. When the verdict is contrary to law or evidence."

In Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765, 766, we said:

"Under this provision the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed

on the trial court in the first instance and on appeal upon this court.

"That a crime has actually been committed must necessarily be the foundation of every criminal prosecution, and this must be proved by other testimony than a confession; the confession being admitted merely for the purpose of connecting the accused with the offense charged. . . .

"In Mays v. State, 19 Okla. Cr. 102, 197 P. 1064, 1068, we said:

"This court adheres to the rule that a conviction cannot be had on the extrajudicial confessions of the defendant without independent evidence of the corpus delicti, and, before such confessions should be admitted, there should be evidence prima facie sufficient to show that the offense to which the confession relates has been committed. * * * In passing upon the evidence submitted to them the jury must first determine beyond a reasonable doubt that the crime has been committed; then they are at liberty to give the alleged confession such weight as it is entitled to, taking into consideration the circumstances surrounding it and the extent to which it has been corroborated.' "

In Robinson v. State, 71 Okla. Cr. 75, 108 P. 2d 196, 198, in the opinion we said:

"In every criminal prosecution, it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused. This court will not ordinarily disturb the decision of a trial judge in overruling a demurrer to the evidence, or in denying a motion for a new trial, based upon the insufficiency of the evidence to support the finding of the trial court where a jury has been waived; and it will not do so where the record discloses evidence showing the commission of the offense charged, and from which guilt of the defendant can be fairly inferred; but it will interfere where it clearly appears that the finding of fact and the

decision of the trial court have no substantial support, or are clearly without support in the evidence.

"That a crime has actually been committed must necessarily be the foundation of every criminal prosecution, and this must be proved by other testimony than a confession; the confession being admitted merely for the purpose of connecting the accused with the offense charged. . . .

"Extrajudicial confessions of guilt, without proof of the corpus delicti, are insufficient to justify a conviction.

"In 22 C.J.S., Criminal Law, § 839, it is said:

" 'It is the general rule both under statutes and at common law that an extrajudicial confession does not warrant a conviction unless it is corroborated by independent evidence of the corpus delicti.' Citing the following Oklahoma cases: Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765; Lake v. State, 59 Okla. Cr. 280, 57 P. 2d 1199; Young v. State, 56 Okla. Cr. 375, 40 P. 2d 686: Bridwell v. State, 52 Okla. Cr. 353, 5 P. 2d 403; Edwards v. State, 46 Okla. Cr. 77, 288 P. 359; Blakemore v. State, 39 Okla. Cr. 355, 265 P. 152; Cherry v. State, 33 Okla. Cr. 37, 241 P. 833; Key v. State, 26 Okla. Cr. 55, 221 P. 1048; Mays v. State, 19 Okla. Cr. 102, 197 P. 1064; Henry v. State, 14 Okla. Cr. 189, 169 P. 658; Shires v. State, 2 Okla. Cr. 89, 99 P. 1100. And see Choate v. State, 12 Okla. Cr. 560, 160 P. 34, L.R.A. 1917A, 1287."

See, also, Underhill's Crim. Ev., secs. 240, 241.

In the case of Hamil v. State, 8 Okla. Cr. 119, 126 P. 591, it is held:

"To sustain a conviction of crime, each and every material element must be supported by the evidence."

In Henry v. State, 14 Okla. Cr. 189, 169 P. 658, it is held:

"In a criminal case a conviction cannot be had on the extrajudicial confessions of the defendant, without evidence aliunde of the corpus delicti, but direct and positive proof of that fact is not indispensable."

In the case of Brown v. State, 18 Okla. Cr. 509, 196 P. 967, it is held:

"Where the state relies in part for a conviction on a purported extrajudicial confession of defendant, there must be other proof of the corpus delicti, either direct or circumstantial, before a conviction can be sustained."

An "admission," as applied in a criminal case, is a statement by the defendant of a fact or facts pertinent to the issue, but which is of itself insufficient to sustain conviction.

"Admission" admits only some part or some element of the crime charged, but not the guilt, and leaves the rest to be proved by other evidence.

In 22 C. J. S., Criminal Law, sec. 842, p. 1478, it is said:

"Where the state introduces in evidence the confession of accused, it is bound by exculpatory statements contained therein unless they are shown by the evidence to be untrue; but the falsity of such exculpatory statements may be shown by circumstantial as well as by direct evidence."

It will be noted, that the witness Rhodes stated that the defendant "said he had been to Grant, and that his wife had been driving". There is no evidence in the record that "Johnnie had had several drinks", that were of intoxicating liquor. The evidence shows that the witness Rhodes failed to find any signs of intoxicating liquor in searching the defendant's car, or the person of the defendant; which action on the part of said witness, as

an officer, was wholly unauthorized. There is no proof as to what direction the Pontiac car was driven to reach the point where it was found, except witness' answer to the leading and suggestive question by the county attorney when asked after he said his wife had been driving:

"Q. He said he had driven from his place to the scene of the accident? A. Yes, sir."

There is no testimony tending to show the location of the defendant's place.

Outside of the defendant's purported confession there is an entire absence of evidence that the defendant drove the said car as alleged in the information.

To sustain the allegations of the information, the proof should have shown that the Pontiac 4-Door Sedan car was driven by the defendant, "northward on Highway Number 271, from a point about one mile south of Grant, Oklahoma, to a point about ⅛ mile south of said Grant, Choctaw county," while the defendant was under the influence of intoxicating liquor.

In Green v. State, 7 Okla. Cr. 194, 122 P. 1108, 1109, this court held:

"Where the evidence only raises a mere suspicion of the guilt of the accused, it is insufficient to warrant a conviction; and where it clearly appears that the findings of fact and the decision of the trial court has no substantial support, or is clearly without support in the evidence, the judgment will be reversed."

In Wheeler v. State, 67 Okla. Cr. 291, 94 P. 2d 9, a conviction for driving an automobile on public highway while under the influence of intoxicating liquor, this court held:

"To sustain a conviction, it should appear that not only the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

In Kennedy v. State, 76 Okla. Cr. 256, 137 P. 2d 244, a similar case, this court held:

"Where the evidence raises a mere suspicion, or, admitting all that it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to return a verdict of acquittal."

It is a well established principle of law that, where a criminal charge is to be proved by circumstantial evidence tending to show defendant's guilt, if any, the proof ought to be not only consistent with the defendant's guilt, but inconsistent with any other rational conclusion.

From a careful examination and consideration of the entire record in the case, it appears that the trial judge, as shown by the two final questions propounded by the court, found the defendant guilty upon a mistaken view of the law, in that he based his judgment upon the admissions of the defendant as testified to by the prosecuting witness.

It follows that for the reasons assigned, the judgment appealed from should be reversed.