**Joe Raymond MORENO, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16883.**

Court of Criminal Appeals of Oklahoma.

Dec. 27, 1972.

Barry Albert, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

OPINION

BUSSEY, Presiding Judge:

Appellant, Joe Raymond Moreno, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Burglary in the Second Degree; his punishment was fixed at seven (7) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Art Mashburn testified that he was the operator of Mashburn Arms Company, located at 1020 Northwest 6th in Oklahoma City. At about 2:00 o'clock p. m. November 8, 1970, he was called to the store by the security service. Upon arriving he observed a hole in the wall of that store. A sledge hammer and a jimmie bar, and a duffle bag were lying at the back of

his store. Another duffle bag, containing approximately fourteen of his guns was found at the front of the store.

Officer White testified that approximately 2:00 p. m. on November 8, 1970, he received a call of a silent alarm at the Mashburn Arms Company. He proceeded to the location and observed Officer Kane at the east side of the building. The defendant ran up to him and stated, "The officer in the back needed help." He immediately went to the back of the store and had conversation with Officer DeMoss. Ascertaining that DeMoss did not need help, he went to the east side of the building and had a conversation with Officer Kane. He and Officer Kane both left the scene looking for a suspect. Approximately 20 minutes later he observed Officer Kane and the defendant, standing on a porch in the Eleven Hundred block of Northwest 5th.

Officer DeMoss testified on the afternoon in question, he answered a call of a silent security burglar alarm, going off in the Mashburn Arms Store. He arrived at the store prior to the other officers. He was checking the front of the store when Officer Kane arrived at the scene. He advised Kane that he was going to check the rear of the building. He testified that he did not observe the defendant at the scene until he had been arrested and returned in the custody of Officer Kane.

Mary Barton testified that she lived at 1122–A Northwest Fifth. On the afternoon of November 8, a man, whom she could not identify came to her door and asked if he could use the telephone. He stated that his car was stalled and that he had left his billfold at home and needed to call a cab. Shortly thereafter, two police officers arrived and placed defendant under arrest.

Officer Kane testified that he answered the silent alarm call at Mashburn Arms. He arrived on the east side of the building and observed Officer DeMoss at the front. He had a conversation with DeMoss and as he started getting out of the car, he observed the defendant "running around a little nook in the building." The defendant hesitated for a minute, and "kept on running up to me." (Tr. 33) The defendant advised him that there was an officer in trouble in back of the building and that he was chasing a man. He advised defendant to wait at the police car and he ran toward the back of the building. After talking to Officer DeMoss, he returned to the front of the building and attempted to find the defendant. He subsequently arrested the defendant at Mary Barton's residence.

Officer Connelly identified certain photographs taken at the scene.

Officer Kane was recalled and testified that after placing defendant under arrest, he advised defendant of his Miranda rights. He testified that he advised him,

> "that he had a right to remain silent, advised him of anything you can say will be used against you in a court of law; also advised him that he had a right to talk to a lawyer and have him present with you while you are being questioned. He—I also advised him that if he cannot afford to hire an attorney, one will be appointed to represent him before any questioning if he wished one, and after I advised him of these rights, I asked him, do you understand each of these rights that I have explained to you." (Tr. 68)

The defendant replied that he understood his rights.

Officer Snook testified that he interrogated the defendant on November 9, 1970, in the police interrogation room. He advised the defendant that he was a police officer and defendant was under arrest for a charge of burglary. He asked the defendant if he understood what his rights were. The defendant stated, "he knew what his rights were and knew that we caught him good and he wanted to make a deal with me—all in one sentence." (Tr. 74) The defendant stated "that if he could make a deal with me where he could go ahead and plead guilty to this charge for a three-year sentence, he would attempt to locate Marjorie Crawford for us."

(Tr. 75) The defendant was advised that the officer did not have authority to make deals with him and that he would have to talk with his supervisor.

For the defense, Nancy Trevino testified that she was defendant's girlfriend and that approximately 2:00 p. m., she was with the defendant at the Safeway Store, across the street from the Mashburn Arms Company. The defendant pointed across the street, and she observed a scout car. The defendant stated that he was "going to go over there." She replied that he had better not because he would get in trouble. The defendant stated, "I am going anyway and walked across the street." She got in the car and left.

The defendant asserts two propositions of error. To-wit: that the alleged confession was inadmissible and/or if admissible stands uncorroborated and therefore not chargeable against him. The defendant contends that the confession was inadmissible in that Officer Snook did not fully advise defendant of his constitutional rights. We are of the opinion this contention is without merit.

 Officer Kane testified that he advised defendant of his Miranda rights, immediately upon arrest, which occurred one day prior to the conversation with Officer Snook. In MaGuire v. United States, 396 F.2d 327 (9th Cir., 1968), the Court stated:

"Officer Hammond's warning, which was clearly adequate to meet the Miranda standards, came three days before the interrogation of appellant by Agent Turnage; thus, even if the warning given by Turnage was insufficient, the appellant could not claim he had not been apprised of the Miranda warnings."

We further observe that the defendant's statement was a volunteered statement and not obtained as a result of any questioning. Officer Snook testified that he asked the defendant if he understood his rights whereupon "in one sentence" the defendant stated "yes, he knew what they were and that he knew we caught him good this time." We have previously held that voluntary statements of any kind are not barred by the Fifth Amendment, United States Constitution. See Johnson v. State, Okl.Cr., 448 P.2d 266 (1969), cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121.

Having thus decided the confession was admissible, we must deal with the question of whether or not the confession was corroborated. It has long been the law of this State that a confession not corroborated by independent proof of the corpus delicti, will not sustain a conviction. Shires v. State, 2 Okl.Cr. 89, 99 P. 1100 (1909). The State's evidence established that a burglary had been committed and combined with the testimony of the officers as to defendant's behavior at the scene, clearly establishes the corpus delicti. The judgment and sentence is affirmed.

BLISS and BRETT, JJ., concur.